**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Two Brothers Distributing Inc., et al.,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>Valero Marketing and Supply Co.,<br><br>　　　　　　　　Defendant. | No. CV-15-01509-PHX-DGC<br><br>**ORDER** |

  Plaintiffs in this case include Two Brothers Distributing, Inc. ("Two Brothers"), an Arizona-based gasoline distributor, and ten associated gasoline retailers (the "Station Plaintiffs"). On August 31, 2015, Plaintiffs filed an amended complaint against Valero Marketing and Supply Company ("Valero") asserting claims for breach of contract, fraud, tortious interference with contract, and violation of the Robinson-Patman Act. Doc. 12. Valero filed a motion to dismiss for failure to state a claim (Doc. 16), and Plaintiffs have filed a response (Doc. 24).[1] The Court has determined that oral argument will not aid in its decision, and Defendant's request for oral argument is therefore denied. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998). The Court will grant Defendant's motion to dismiss with respect to Plaintiffs' fraud and Robison-Patman Act claims, and deny Defendant's motion with respect to the remaining claims.

---

[1] Plaintiffs' response places all of the citations in footnotes. Plaintiffs shall not use this format in the future, as it is very difficult to read (citations matter when reading legal briefs). All future filings shall place citations in the text.

## I. Background.

Two Brothers is an Arizona-based corporation that distributes gasoline to third-party retailers in the Phoenix area. Doc. 12. The Station Plaintiffs are nine Arizona corporations and one foreign corporation that purchase gasoline from Two Brothers for retail. Valero is a foreign corporation that sells gasoline. *Id.* Prior to 2013, Valero sold gasoline both at the wholesale level and at its own retail stations. *Id.*, ¶ 5. In 2013, Valero spun off all of its retail operations to CST Brands, Inc. ("CST"). *Id.*

In February 2007, Two Brothers entered a "Branded Distributor Marketing Agreement" with Valero ("Distributor Agreement"). *Id.*, ¶ 26. Valero agreed to sell, and Two Brothers agreed to purchase, a minimum quantity of gasoline. *Id.* The agreement provided that the price would be fixed by Valero. *Id.*, ¶ 80. Around the same time, Valero and Two Brothers entered "Brand Conversion Incentive Agreements" for each of the stations supplied by Two Brothers ("Brand Agreement"). *Id.*, ¶ 27. Pursuant to these agreements, these stations became Valero-branded stations and were approved to purchase fuel from Two Brothers under the terms of the Distributor Agreement. *Id.*

Between consummation of the Distributor Agreement in February 2007 and August 2009, Two Brothers complained frequently to Valero about its pricing. *Id.*, ¶ 51. The parties nonetheless executed two subsequent Distributor Agreements in July 2011 and July 2013. *Id.*, ¶¶ 60, 61.

On May 20, 2015, Plaintiffs filed a complaint against Defendant in Maricopa County Superior Court. Doc. 1-1 at 6. Defendant removed the case to this Court under 28 U.S.C. § 1441. Doc. 1. On August 31, 2015, Plaintiffs filed an amended complaint asserting claims for breach of contract, fraud, tortious interference, and violation of the Robinson-Patman Act. Doc. 12. Each of these claims relates to Defendant's pricing practices under its contracts with Two Brothers, which Plaintiffs allege were unfair and designed to drive Plaintiffs out of business. *See id.*, ¶¶ 41, 47-48, 56-57, 65.

## II. Legal Standard.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Well-pleaded factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to a presumption of truth, *Iqbal*, 556 U.S. 662, 680 (2009), and are not sufficient to defeat a 12(b)(6) motion, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

### III. Contract Claims.

Plaintiffs allege that Defendant materially breached the 2007, 2010, and 2013 Distributor Agreements and the various Brand Agreements by setting prices in bad faith. Doc. 12, ¶¶ 76, 83-86, 92. Defendant argues that these claims are time-barred, Doc. 16 at 9, waived, *id.* at 15, and foreclosed by the integration clauses included in each contract and by the statute of frauds. *Id.* at 12, 16. Defendant also argues that the Station Plaintiffs lack standing to pursue any contract claims. *Id.* at 20.

#### 1. Statute of Limitations.

In Arizona, contract claims are subject to a four-year statute of limitations. A.R.S. § 47-2725(A). The limitations period begins to run when the contract is breached. *Baseline Fin. Servs. v. Madison*, 278 P.3d 321, 322 (Ariz. Ct. App. 2012) (citing A.R.S. § 47-2725(B)). Because this case was filed on May 20, 2015, timely claims would include breaches after May 20, 2011.

Defendant contends that all contract claims are time-barred because the alleged breaches began in 2009. Doc. 16 at 9-10. Plaintiffs contend that none of their claims are barred because Defendant's breach was ongoing until at least 2013. Doc. 24 at 2-3. Alternatively, Plaintiffs argue that their claims for breaches of the 2010 and 2013 Distributor Agreements survive.

The Court cannot grant Defendant's motion on this issue. The motion seeks dismissal of all breach of contract claims, but Defendant does not explain how a 2013 Distributor Agreement could have been breached by actions that occurred before

1 May 20, 2011.  Nor does the Court have sufficient factual information regarding the alleged breaches to draw fine lines between timely and untimely breach claims.  That level of factual detail must be provided in the context of summary judgment briefing, not this motion to dismiss.  Plaintiffs' contract claims will not be dismissed as untimely.

### 2. Waiver.

Defendant argues that Two Brothers waived its contract claims by entering agreements with Defendant after Two Brothers became aware of the alleged price manipulation.  Doc. 26 at 15.  Plaintiffs contest whether entering into subsequent agreements constitutes a "clear, decisive and unequivocal" manifestation of intent to waive rights under prior agreements.  Doc. 24 at 11 (citing *Central Ariz. Water Conservation Dist. v. United States*, 32 F. Supp. 2d 1117, 1138 (D. Ariz. 1998)).  Plaintiffs also argue that waiver is not properly resolved on a motion to dismiss.

"Waiver is an affirmative defense and the party asserting it carries the burden of proof."  *Central Ariz. Water Conservation Dist.*, 32 F. Supp. 2d at 1138 (citing Fed. R. Civ. P. 8(c), *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991)).  "Whether a waiver of a contractual right has occurred is a question of fact and must be established by clear and convincing evidence."  *Id.* (citing *L.K. Comstock & Co. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 221 (9th Cir. 1989)).  Because waiver is an affirmative defense and a question of fact, it is not properly resolved on a motion to dismiss unless the plaintiff's claim to have preserved its rights is totally implausible.  *See Tamiami Partners ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Fla.*, 177 F.3d 1212, 1220 n.5 (11th Cir. 1999) (waiver "is not a ground upon which [plaintiff's] complaint could be dismissed"); *Schonberger v. Serchuk*, 742 F. Supp. 108, 114-15 (S.D.N.Y. 1990) (dismissal would only be proper if waiver were "clear on the face of the complaint").

Waiver is not clear on the face of Plaintiffs' complaint, and nothing in Defendant's motion to dismiss renders Two Brothers' claim to have preserved its rights totally implausible.  The Court will not dismiss Plaintiffs' contract claims on waiver grounds.

- 4 -

### 3. Integration Clause and Statute of Frauds.

Defendant contends that Plaintiffs' oral contract claims are barred by the integration clause in each contract and by the Arizona statute of frauds, A.R.S. § 44-101. Plaintiffs' complaint alleges various practices, courses of dealing, negotiations, and representations (Doc. 12, ¶¶ 22-41), and the claim for breach of contract alleges that Defendant "materially breached verbal contracts" entered by the Station Plaintiffs (*id.*, ¶ 77). Plaintiffs concede in their response to the motion to dismiss, however, "that the Statute of Frauds makes any separate oral contract related to fuel sales unenforceable." Doc. 24 at 10-11. The Court accordingly will grant the motion to dismiss with respect to breaches of oral agreements.

This portion of the motion to dismiss focuses only on oral agreements, but the parties' later briefing strays into arguments about parole evidence. The Court will not rule on evidentiary issues in response to a motion to dismiss. The Court also notes that implied-in-law terms are included in every contract whether or not reduced to writing. *See Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28 (Ariz. 2002).

### 4. Station Plaintiffs' Standing.

Under Arizona law, a person who is not a party to a contract or a third-party beneficiary is precluded from asserting a claim for breach of contract. *Norton v. First Fed. Sav.*, 624 P.2d 854, 857 (Ariz. 1981). To recover as a third-party beneficiary, a person must show that the parties to the contract intended to recognize him as the primary party in interest. *Id.* at 856. *See also Basurto v. Utah Const. & Min. Co.*, 485 P.2d 859, 863 (Ariz. Ct. App. 1971) ("Not only must the benefit be intentional and direct but the third person must be the real promisee.").

Defendant argues that the Station Plaintiffs lack standing to assert claims based on the contracts between Two Brothers and Defendant, because they are neither parties nor third-party beneficiaries. Doc. 16 at 20. Defendant also notes that the 2013 Distributor Agreement includes a "no third-party beneficiary" clause, and that all three Distributor

1  Agreements provide that there will be "no direct relationship . . . between [Valero] and
2  any Dealer(s) or Distributor" of Two Brothers.  Doc. 16 at 21-22.  Plaintiffs counter by
3  citing several paragraphs in the relevant contracts that contemplate that Two Brothers
4  will resell gasoline purchased from Defendant to third-party dealers or distributors.  *See*
5  Doc. 24 at 18-19.

6  The paragraphs cited by Plaintiffs do not satisfy the demanding requirements of
7  Arizona law for third-party beneficiary contracts.  They do not show that the contracts
8  between Two Brothers and Defendant were intended to benefit the Station Plaintiffs.
9  They do show that Defendant knew Two Brothers would likely resell fuel to third parties,
10 but that is not enough to establish that the Station Plaintiffs were the contracts' "primary
11 party in interest," *Norton*, 624 P.2d at 856, or "the real promisee," *Basurto*, 485 P.2d at
12 863.  To the contrary, the contracts specifically provided that there would be "no direct
13 relationship . . . between [Valero] and any Dealer(s) or Distributor."  Doc. 16 at 21-22.
14 Because the Station Plaintiffs cannot cure their lack of standing, the Court will dismiss
15 their breach of contract claim without leave to amend.

16 **V.     Fraud Claims.**

17 In Arizona, fraud claims are subject to a three-year statute of limitations.  A.R.S.
18 § 12-543(3).  The limitations period begins to run when the "plaintiff by reasonable
19 diligence could have learned of the fraud, whether or not he actually learned of it."  *Dev.*
20 *Corp. v. Superior Ct.*, 678 P.2d 535, 537 (Ariz. Ct. App. 1984).

21 Plaintiffs allege that Defendant engaged in fraudulent misrepresentation during the
22 negotiations that culminated in the signing of the Distributor Agreement and Brand
23 Conversion Incentive Agreements in 2007.  Doc. 12, ¶¶ 101, 109.  Plaintiffs also state
24 that they noticed discrepancies between Defendant's representations and its behavior
25 almost immediately, *id.* ¶¶ 41, 46-59, 66, and that they made "frequent complaints" about
26 Defendant's pricing activities between 2007 and August 2009, *id.*, ¶ 51.

27 These allegations indicate that Plaintiffs were aware of the facts underlying their
28 fraud claims by August 2009 at the latest.  Thus, the three-year statute of limitations for

these claims expired in September 2012. These claims will be dismissed without leave to amend. *See Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (district court may dismiss without leave to amend where amendment "would be futile due to the bar of the statute of limitations").

## VI. Tortious Interference.

Defendant moves to dismiss Plaintiffs' claim for tortious interference with contract, contending that it is time-barred, that Plaintiffs have failed to plead a prima facie case, and that the Station Plaintiffs lack standing to pursue the claim. Doc. 16 at 11, 17, 23. The Court will address each argument in turn.

### A. Statute of Limitations.

In Arizona, tortious interference claims are subject to a two-year statute of limitations. *See Clark v. AiResearch Mfg. Co. of Ariz.*, 673 P.2d 984, 987-88 (Ariz. Ct. App. 1983) (citing A.R.S. § 12-542). The limitations period for tort claims begins to run when the "when a plaintiff knows, or through the exercise of reasonable diligence should know, of the defendant's wrongful conduct." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 913 P.2d 1092, 1095 (Ariz. 1996). When a tort involves continuing wrongful conduct, the statute of limitations does not expire until two years after the last wrongful act. *See Floyd v. Donahue*, 923 P.2d 875, 879 (Ariz. Ct. App. 1996); *Garcia v. Sumrall*, 121 P.2d 640, 643 (Ariz. 1942).

Plaintiffs allege that Defendant engaged in tortious interference by manipulating prices so as to disrupt the relationships between Two Brothers and the Station Plaintiffs. Doc. 12, ¶ 118. Although the complaint is primarily concerned with pricing activities in 2008, 2009, and 2010, *see id.*, ¶¶ 41, 46-49, 59, it also alleges that Defendant continues to manipulate prices to the present day, *id.*, ¶¶ 65, 69. This claim will not be dismissed as time-barred, but the Court will consider only events that occurred on or after May 20, 2013 in determining whether Plaintiffs have stated a claim. *See Garcia*, 121 P.2d 643 ("damages may be recovered for all of the statutory period prior to the commencement of the action").

- 7 -

**B.     Prima Facie Case.**

In Arizona, a claim of tortious interference with contract must allege "(1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly." *Wells Fargo*, 38 P.3d at 31. Arizona courts also recognize a claim for tortious interference with contract where the defendant has not caused a breach, but has made the plaintiff's performance "more expensive or burdensome." *Plattner v. State Farm Mut. Auto. Ins. Co.*, 812 P.2d 1129, 1134 (Ariz. Ct. App. 1991) (citing Restatement (Second) of Torts, § 766A (1979)). In order to show that the defendant acted improperly, a plaintiff must show that defendant's conduct was "wrongful by some measure beyond the fact of the interference itself." *Snow v. W. Sav. & Loan Ass'n*, 730 P.2d 204, 212 (Ariz. 1986). In other words, a plaintiff must show that the defendant's conduct was motivated by ill will, undertaken in bad faith, or otherwise contrary to public policy. *See* Restatement (Second) of Torts § 767, cmt. d.

Plaintiffs allege that, during the relevant time period, Two Brothers had exclusive contracts with the Station Plaintiffs to sell fuel to each station, Defendant knew about these contracts, Defendant engaged in price manipulation in bad faith with the intention to drive Plaintiffs out of business and lessen competition between gasoline retailers, Defendant's conduct made Two Brothers' performance more expensive, and Plaintiffs suffered economic harm as a result. Doc. 12, ¶¶ 116-20. These allegations establish a prima facie case for tortious interference under Arizona law.

Defendant contends that Plaintiffs fail to state a claim for tortious interference because the contract between Defendant and Two Brothers did not contemplate pricing that would allow both Two Brothers and the Station Plaintiffs to make a profit. Doc. 26 at 14. This argument misses the mark. The essence of Plaintiffs' claim is that Defendant manipulated prices in bad faith with the intention of driving Plaintiffs out of business and lessening competition between gasoline retailers. This conduct is tortious, regardless

whether Plaintiffs would otherwise have been profitable.

Defendant also argues that Plaintiffs have failed to state a claim because they have not disputed that Defendant's conduct may have been undertaken "at least in part . . . to advance [its] own economic interests." *Id.* at 18 (citing *Miller v. Hehlen*, 104 P.3d 193, 202 (Ariz. Ct. App. 2004) (citing Restatement (Second) of Torts § 768)). This argument also misses the mark. Defendant's conduct may have been tortious even if it was self-interested. *See Wells Fargo*, 38 P.3d at 31; *cf.* Restatement (Second) of Torts § 768 (a party may liable for tortious interference, notwithstanding economic motive, if it employs "wrongful means"). Plaintiffs need only allege that Defendant's conduct was improper. They have done so. Therefore, the Court concludes that Plaintiffs have set forth a prima facie case for tortious interference with contract.

### C. Station Plaintiffs' Standing.

Defendant argues that the Station Plaintiffs lack standing to assert a claim for tortious interference "to the extent the claim alleges that it was Two Brothers who had the business expectation of profit." Doc. 16 at 23. This mischaracterizes the Stations Plaintiffs' claim. The Station Plaintiffs contend that they suffered direct economic injury as a result of Defendant's tortious interference with Two Brothers' performance. Doc. 24 at 18; Doc. 12, ¶ 118. That is sufficient injury to support a claim for tortious interference. *See* Restatement (Second) of Torts § 766. The Court will not dismiss the Station Plaintiffs' claims for lack of standing.

### VII. Robinson-Patman Act.

The Robinson-Patman Act prohibits "discriminat[ion] in price between different purchasers of commodities of like grade and quality . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce." 15 U.S.C. § 13. Two Brothers alleges that Defendant violated the Act "by charging Two Brothers a higher price for Valero-branded fuel than Valero contemporaneously charged its own Valero-owned stations." Doc. 12, ¶ 123.

This claim fails as a matter of law. As Defendant points out, every Court of

Appeals to consider the question has held that the Robison-Patman Act does not apply to intra-corporate transfers or transfers between a parent and a wholly-owned subsidiary. *See Sec. Tire & Rubber Co. v. Gates Rubber Co.*, 598 F.2d 962, 967 (5th Cir. 1979); *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 221 (6th Cir. 1985); *Utah Foam Prods. Co. v. Upjohn Co.*, 154 F.3d 1212, 1218 (10th Cir. 1998); *City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 277-79 (8th Cir. 1988). The Seventh Circuit has specifically held that the Act does not apply to transfers of gasoline from a gasoline supplier to its own retail station. *O'Byrne v. Cheker Oil Co.*, 727 F.2d 159, 164 (7th Cir. 1984).

In their response, Plaintiffs concede that the Robinson-Patman Act does not apply to intra-corporate transfers, but insists that they have a viable argument that Defendant violated the Act by giving price breaks to stations formerly owned by Valero after these stations were spun off to CST. Doc. 24 at 21. This argument is not fairly set forth on the face of the complaint. Therefore, the Court will dismiss the claim. Plaintiffs will be granted leave to amend this claim to reflect their allegation that Defendant engaged in unlawful price discrimination favoring CST.

**IT IS ORDERED**:

1. Defendant's motion to dismiss (Doc. 16) is **granted**, without leave to amend, with respect to Plaintiffs' fraud claims, Station Plaintiffs' third-party beneficiary claims, and Station Plaintiffs' verbal contract claim.

2. Defendant's motion to dismiss is **granted**, with leave to amend, with respect to Plaintiffs' Robinson-Patman Act claim. Plaintiffs shall file an amended complaint by **December 18, 2015**.

3. Defendant's motion to dismiss is otherwise **denied**.

4. Defendant's request to take judicial notice (Doc. 17) is **denied** as moot.

Dated this 25th day of November, 2015.

_____
David G. Campbell
United States District Judge