Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391
TELEPHONE 602.229.5200

*Attorneys for Defendant Valero Marketing and Supply Company*

Jeffrey H. Wolf (011361)
jeffrey.wolf@quarles.com
Brian A. Howie (026021)
brian.howie@quarles.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Two Brothers Distributing, Inc., et al., <br><br> Plaintiffs, <br><br> v. <br><br> Valero Marketing and Supply Company, a foreign corporation, <br><br> Defendant. | No. 2:15-cv-01509-DGC <br><br> **DEFENDANT'S RENEWED MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |

Pursuant to Local Rule 54.2, the May 10, 2019 Mandate of the United States Court of Appeals for the Ninth Circuit (Doc. 172), and this Court's March 7, 2018 Order (Doc. 170), Defendant Valero Marketing and Supply Company ("VMSC") moves for an award of attorneys' fees and costs of suit pursuant to the Distributor Marketing Agreements (the "DMAs") between VMSC and Plaintiff Two Brothers Distributing, Inc. ("Two Brothers") or, alternatively, under A.R.S. § 12-341.01(A). The DMAs provide that the "substantially prevailing party" in a lawsuit arising out of the relationship between Two Brothers and VMSC "shall be entitled to recover its reasonable costs of suit including its reasonable attorneys' fees." Plaintiffs' claims arose out of the relationship between fuel supplier VMSC and fuel distributor Two Brothers, who sold that fuel to the

Valero-branded Station Plaintiffs.[1]  VMSC is the substantially prevailing party because it successfully obtained summary judgment on all of Plaintiffs' claims, and the Ninth Circuit affirmed.  (*See* Docs. 155, 172-1).  VMSC requests that the Court enter an order awarding VMSC its reasonable costs of suit, including $1,781,078.75 in attorneys' fees, $445,354.09 in expert fees, and $49,209.44 in costs.

Reasonable costs of suit are mandated by the contract; but should the Court find otherwise, VMSC seeks an award of the foregoing attorneys' fees under A.R.S. § 12-341.01(A) because all of Plaintiffs' claims arose out of contract.[2]  This motion is supported by the Court's file, the Memorandum of Points and Authorities, the Statement of Consultation attached as Exhibit 1, the Fee Agreement attached as Exhibit 2, the Task-Based Itemized Statements of Fees and Expenses attached as Exhibits 3 and 4,[3] the Affidavit of Jeffrey H. Wolf attached as Exhibit 5, invoices related to VMSC's expert witnesses Michael Fahlman and Michael Noel, attached as Exhibits 6 and 7, respectively, and invoices supporting VMSC's other costs, attached as Exhibit 8.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.     **ELIGIBILITY FOR AN AWARD OF FEES AND COSTS.**

     A.     **Judgment and Applicable Authority for this Motion.**

The Court granted summary judgment to VMSC on all of Plaintiffs' claims. (Doc. 155).  Plaintiffs appealed, and the Ninth Circuit affirmed.[4]  (Doc. 172-1).  As the

---

[1] "Station Plaintiffs" refers to the ten plaintiff entities that (with the exception of Springwells & I-75, Inc.) were Valero-branded fuel retail stations.

[2] Should the Court deny costs under the contracts, VMSC is entitled to its taxable costs ($10,264.83) under 28 U.S.C. § 1920 and is contemporaneously filing a bill of costs.

[3] Exhibits 3 and 4 are the Itemized Statements of Fees and Expenses incurred by VMSC from the inception of the case through October 3, 2017 (when VMSC first filed its motion for fees) (Exhibit 3) and from October 3, 2017 to date (Exhibit 4).

[4] The Ninth Circuit remanded to this Court for consideration of VMSC's request for attorneys' fees and costs incurred on appeal.  (Doc. 172-1).

QB\157951.00002\57657509.2

prevailing party, VMSC is entitled to an award of its reasonable attorneys' fees and other reasonable costs of suit, including of the appeal, under the DMAs and Arizona law. Alternatively, if the Court determines that some or all of the requested fees are not recoverable under the DMAs, then VMSC requests that the Court exercise its discretion to award VMSC its reasonable attorneys' fees under A.R.S. § 12-341.01.

## B.    The Nature of the Case.

This complex case began when the eleven plaintiffs filed a complaint against VMSC on May 20, 2015 in the Maricopa County Superior Court.  (Doc. 1).   VMSC removed the action to this Court on August 2, 2015.  (*Id.*).  Plaintiffs' claims covered a 9-year time period (2007-2017) and involved three fuel supply contracts—the DMAs (as well as a number of other ancillary contracts)—between VMSC and Two Brothers. (Doc. 29).  The initial complaint contained six counts:  (1) breach of contract, (2) breach of the open price term under A.R.S. § 47-2305(B), (3) breach of the implied covenant of good faith and fair dealing, (4) fraudulent inducement, (5) promissory estoppel, and (6) fraud.   (Doc. 1, Ex. A). Plaintiffs amended their complaint, dropping the promissory estoppel claim, but adding claims for tortious interference and violation of the Robinson-Patman Act ("RPA").  (Doc. 12).  VMSC moved to dismiss the Amended Complaint.  The Court granted that motion in part and denied it in part—dismissing, without leave to amend, certain claims, limiting others, and granting leave to amend.  (Doc. 26 at 5-6, 10).

The Second Amended Complaint pled five claims by Two Brothers against VMSC: (1) breach of the three DMAs, (2) breach of the open price term under A.R.S. § 47-2305(B), (3) breach of the implied covenant of good faith and fair dealing, (4) tortious interference, and (5) violation of the RPA.  (Doc. 29).  The Station Plaintiffs pled tortious interference and RPA claims.  (*Id.* at 21-23).  Plaintiffs sought treble damages for the RPA claim, as well as prejudgment interest, attorneys' fees, and costs.  (Doc. 29 at 24).

Due to the nature of the claims, the number of plaintiffs, the number of contracts,

QB\157951.00002\57657509.2

the time period involved, and the complexity of the factual issues, among other things, discovery necessarily was time-intensive and voluminous. Adding to the mix, eight of the Station Plaintiffs previously had filed for bankruptcy protection, and Plaintiffs claimed damages related to those filings. That forced VMSC to familiarize itself with lengthy bankruptcy dockets. There were several discovery disputes that needed to be resolved. (Docs. 65, 68, 85, 89, 93, 96, 104, 106, 109, 111, 119, 125). The parties collectively took ten depositions, resulting in over 2,200 pages of transcript. VMSC's counsel was required to travel for depositions of former VMSC employee David Parker (Burbank, California); VMSC's Rule 30(b)(6) witness, Gevan Alford (San Antonio, Texas); and Plaintiffs' expert Ron Santicola (Boca Raton, Florida). To limit litigation costs, VMSC's counsel took the deposition of Houieda Saad (one of Plaintiffs' witnesses) by videoconference.

VMSC produced over 51,500 pages of documents, third-parties produced over 11,600 pages of third-party documents, and Plaintiffs produced over 166,000 pages of documents (over 100,000 pages related to the bankruptcies). Each side designated two experts, who disclosed seven written reports plus 10,000 pages of supporting files. VMSC's experts, Dr. Noel and Mr. Fahlman, each produced one written report. Plaintiffs' expert Robert Mroz produced an initial report and a rebuttal report that retracted his initial report. Plaintiffs' expert Ron Santicola produced an initial report, a rebuttal report, and a declaration in response to VMSC's *Daubert* motion. The deficiencies in the Mroz and Santicola reports resulted in challenges to their admissibility.[5]

On January 31, 2017, VMSC filed <u>two</u> motions for summary judgment, a supporting statement of facts, and a *Daubert* motion directed at Mr. Santicola. (Docs. 112-115 (over 600 pages)). The summary judgment motions relied, in part, on the motions to exclude Plaintiffs' experts and on Dr. Noel's fuel price analyses. These efforts

---

[5] The Court determined that it would consider the motions directed at the experts at the same time as it decided the summary judgment motions. (Doc. 110; *see also* Doc. 146).

resulted in the Court's 31-page order granting summary judgment. (Doc. 155).

On October 3, 2017, VMSC filed a motion for fees and costs (Doc. 158), which the parties fully briefed (*see* Docs. 168-69). During the briefing, Plaintiffs filed their Notice of Appeal. (Doc. 161). Because the appeal could change the case outcome, the Court denied the motion without prejudice to re-filing after resolution of the appeal. (Doc. 170).

On appeal, VMSC prepared an answering brief and responded to motions filed by Plaintiffs. VMSC also prepared for oral argument, which was set for April 17, 2019. On April 2, 2019, the Ninth Circuit ordered that the case be submitted without oral argument, stating that it was "of the unanimous opinion that the facts and legal arguments are adequately presented in the briefs and records." (App. Doc. 59). On April 18, 2019, the Ninth Circuit affirmed this Court's grant of summary judgment in favor of VMSC, and the mandate issued on May 10, 2019. (Docs. 172, 172-1).

### C.    VMSC Prevailed in Defense of All of Plaintiff's Claims.

VMSC obtained dismissal of some of Plaintiffs' claims and summary judgment on everything else, which result was affirmed on appeal. VMSC tried to resolve the litigation in a settlement conference on July 12, 2016; however, the conference concluded quickly with no progress toward resolution. (Wolf Affidavit, ¶ 7). Along the way, Plaintiffs took no steps to minimize the scope of the dispute—*e.g.*, only when VMSC moved for summary judgment did Plaintiffs drop the claims by Two Brothers IV (time-barred under the Court's November 25, 2015 ruling) and the Station Plaintiffs' RPA claim (no standing). (Doc. 135). Plaintiffs also appealed the Court's well-reasoned summary judgment ruling, which caused VMSC to incur even more fees and costs.

## II.    VMSC IS ENTITLED TO ITS ATTORNEYS' FEES AND COSTS.

### A.    The DMAs Expressly Provide for a Non-Discretionary Award of Reasonable Costs of Suit, Including Reasonable Attorneys' Fees.

The 2007 DMA provides for a non-discretionary award of "reasonable costs of suit,

including reasonable attorneys' fees," to the "substantially prevailing party":

> In the event of any lawsuit between VMSC and Distributor [Two Brothers] arising out of or relating to the transactions and relationship contemplated by this Agreement (regardless whether such action alleges breach of contract, tort, violation of a statute, or any other cause of action), ***the substantially prevailing party shall be entitled to recover its reasonable costs of suit including its reasonable attorney's fees***.

(Doc. 115-2, at 126 (2007 DMA, § 20(B)) (emphasis added); *see also id.* at 214 (2010 DMA § 20(B)); Doc. 16-2, at 86-87 (2013 DMA § 18(B)) (containing substantially similar provision); Doc. 115-2, at 264-65 (2016 DMA § 18(B)).  This lawsuit plainly arose out of the "transactions or relationship" between VMSC and Two Brothers, and the fee-shifting provision expressly covers all of Two Brothers' claims.  Indeed, Two Brothers has conceded that VMSC is entitled to recover its reasonable fees and expenses under the mandatory fee-shifting provisions of the DMAs.  (Doc. 168, at 2, 7).

The tortious interference claims by the Station Plaintiffs also arose out of the "transactions or relationship" contemplated by the DMAs, because they were based on alleged oral representations that Plaintiffs contended were part of the DMAs or implied in the DMAs.[6]  Also, the Station Plaintiffs initially claimed third-party beneficiary status under the DMAs and continued to assert an RPA claim based on the fuel transactions between VMSC and Two Brothers.  Thus, the Station Plaintiffs' claims also arose out of the "transactions or relationship" contemplated by the DMAs.

### 1. Based on the Outcome of the Case an Award of Attorneys' Fees to VMSC is Mandatory.

An award of attorneys' fees governed by a contract is mandatory.  *See Bennett v.*

---

[6] Although A.R.S. § 12-341.01(A) does not control this Court's interpretation of the fee-provision of the DMAs, a federal district court in Arizona held that fees can be awarded under the Arizona statute when "the supposed tort of interference with contract collapses into the claim of breach of contract itself"—as happened here.  *See Killingsworth v. State Farm Mut. Auto. Ins. Co.*, 2006 WL 381682, at * 2 (D. Ariz. Feb. 16, 2006).

*Appaloosa Horse Club*, 35 P.3d 426, 432 (Ariz. App. 2001) ("The awarding of attorney's fees to a prevailing party pursuant to a contract between the parties is mandatory.").  A contractual provision on attorneys' fees and costs of suit must be "enforced according to its terms."  *F.D.I.C. v. Adams*, 931 P.2d 1095, 1105 (Ariz. App. 1996).  Moreover, Arizona's fee statute, A.R.S. § 12-341.01(A), "does not govern when the contract expressly provides for" payment of attorney's fees.  *See Sullivan v. State Land Dept.*, 838 P.2d 1360, 1362 (Ariz. App. 1992); *see also Gametech Int'l, Inc. v. Trend Gaming Sys. L.L.C.*, 380 F. Supp. 2d 1084, 1089 (D. Ariz. 2005) ("An attorney's fee provision contained in a contract controls to the exclusion of the statute.").  Importantly, a fee award under a contractual provision includes recovery of fees incurred on appeal, on preparation of the fee application, on witnesses and theories not presented at trial, and on travel time. *See Bennett*, 35 P.3d at 432; *Adams*, 931 P.2d at 1101-02.

### 2.    VMSC is also Entitled to Recover its Reasonable Litigation Costs.

The term "reasonable costs of suit" is much broader than just attorneys' fees and includes ***all*** of the other reasonable expenses that Plaintiffs' lawsuit caused VMSC to incur, including both taxable <u>and</u> non-taxable costs—*e.g.*, expert witness fees, court reporter fees, videographer fees, fees for real time transcription, travel costs associated with depositions, vendor costs for e-discovery, postage and courier charges, copying charges, and charges related to subpoenas (as itemized in Exhibits 3 and 4).  *See Gametech Int'l,* 380 F. Supp. 2d at 1103 ("[W]here a fee agreement requires a client to reimburse his attorney for non-taxable expenses, the non-taxable expenses are recoverable from the adverse party.").  Arizona courts have awarded expert fees under a contractual provision requiring payment of "all costs" of suit.  *See Keg Restaurants Arizona, Inc. v. Jones*, 375 P.3d 1173, 1188 (Ariz. App. 2016) (affirming award of expert fees under contract that provided that the "unsuccessful party shall pay to the prevailing party a

reasonable sum for . . . costs and disbursements, including the fees, costs and disbursements of consultants [and] professionals"); *R & F Investors, Inc. v. Ciolli*, 2015 WL 5826859, at *5 (Ariz. App. Oct. 6, 2015) (unpub.); *see also Weitz Co. v. MH Washington*, 631 F.3d 510, 535-36 (8th Cir. 2011) (affirming award of expert fees, costs of trial exhibits and all deposition costs where the contract entitled the prevailing party to "all costs, including reasonable attorney's fees").  VMSC incurred $445,354.09 in expert witness fees, which is reasonable considering the caliber and effort by VMSC's two experts, and $49,209.44 in reasonable taxable and non-taxable costs.  (Wolf Affidavit, ¶¶ 33-34, 38-46).  Non-taxable costs are recoverable under contract even when not allowed by statute.  *See Ahwatukee Custom Estates Mgmt. Assoc. v. Bach*, 973 P.2d 106, 109 (Ariz. 1999); *see also Best Western Intern., Inc. v. AV Inn Assoc.*, LLC., 2012 WL 1246366, at *1 (D. Ariz. Apr. 13, 2012) (awarding non-taxable costs and expenses pursuant to contract); *Suenos, LLC v. Goldman*, 2013 WL 11317075, at *6 (D. Ariz. Nov. 26, 2013) (same).

**B.    In the Alternative, VMSC is Eligible for an Award of its Attorneys' Fees Under A.R.S. § 12-341.01(A).**

**1.    Plaintiffs' Claims Arose Out of Contract.**

Arizona law provides that "[i]n any action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees."  A.R.S. § 12-341.01(A).  "The meaning of 'arises out of contract' is broad for the purposes of this statute."  *ML Servicing Co. v. Coles*, 334 P.3d 745, 753 (Ariz. App. 2014).  "The test to determine if an action arises out of contract is whether the plaintiff would have a claim 'even in the absence of a contract.'"  *Id.*; *see also Sparks v. Republic Nat. Life Ins. Co.*, 647 P.2d 1127, 1141 (Ariz. 1982) (Test is whether "the cause of action in tort could not exist but for the breach of the contract.").  In this instance, there can be no doubt that Plaintiffs' claims arose out of the contracts between VMSC and Two Brothers.  The first three

QB\157951.00002\57657509.2

counts (for breach of contract, breach of U.C.C. Section 2-305, and breach of the covenant of good faith and fair dealing) were clearly based on contract (the DMAs).[7]

"Moreover, a trial court may award attorney fees under § 12-341.01 to the successful party even on contract claims that are interwoven with tort claims." *ML Servicing*, 334 P.3d at 753 (affirming finding that insurance contract was at core of action, and therefore award of fees in connection with unjust enrichment, constructive trust and other tort claims could not have existed without contracts); *see also Killingsworth*, 2006 WL 381682, at *2 (awarding fees in connection with a tortious interference claim because the claim "collapses into the claim of breach of contract itself"); *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc*., 212 P.3d 853, 860 (Ariz. App. 2009) (affirming fee award because the trade secrets claim was inextricably interwoven and overlapping with the contract claims) (citing *Ransey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 6 P.3d 315, 318 (Ariz. App. 2000) ("It is well-established that a successful party on a contract claim may recover not only attorneys' fees expended on the contract claim, but also fees expended in litigating an 'interwoven' tort claim.")).

In cases where "one claim for relief may involve related legal theories, . . . '[m]uch of counsel's time [may] be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.'" *Schweiger v. China Doll Restaurant, Inc.*, 673 P.2d 927, 933 (Ariz. App. 1983). "Claims are interwoven when they are based on the same set of facts and involve common allegations, which require the same factual and legal development." *Skydive Arizona, Inc. v. Hogue*, 360

---

[7] Also, the Court may award fees against parties, such as Station Plaintiffs, who claim to be third-party beneficiaries under a contract. *See Western Technologies, Inc. v Sverdrup & Parcel, Inc.,* 739 P.2d 1318, 1325 (Ariz. App. 1986) (finding that third party beneficiary claim arose out of contract under A.R.S. § 12-341.01(A)); *see also Quain v. Capstar*, 2010 WL 5463340, at *1 (D. Ariz. Dec. 29, 2010) (awarding fees under A.R.S. § 12-341.01 based on claim of third party beneficiary status). Indeed, the Station Plaintiffs do not dispute this point. (Doc. 168, at 10).

P.3d 153, 165-66 (Ariz. App. 2015) (citing *Modular Mining*, 212 P.3d at 860-61); *see also Bennett v. Baxter Grp., Inc*., 224 P.3d 230, 236 (Ariz. App. 2010) (concluding that fees can be awarded on non-contract claims "when these claims are so factually connected to a contract claim that they require the same work that is already necessary for the defense or prosecution of the contract claim alone"); *Zeagler v. Buckley*, 219 P.3d 247, 249 (Ariz. App. 2009) (affirming fee award when "claims are so interrelated that identical or substantially overlapping discovery would occur").

The tortious interference claims by Two Brothers and by the Station Plaintiffs were interwoven with Two Brothers' contract claims. The tort claims were based on the same allegation of VMSC wrongfully pricing fuel, and the same alleged damages of reducing Plaintiffs' profits, and therefore required the same discovery and analysis of fuel prices and financial records. Functionally, the tortious interference claim was based on the same factual predicate as the contract claims: that VMSC did not price fuel in accordance with alleged statements, barred by the parol evidence rule.

Similarly, Plaintiffs' RPA claim was based on alleged discriminatory pricing between Two Brothers and CST. (*See* Doc. 26 (limiting the RPA claim)). Again, the same inquiry required for the contract claims—evaluating pricing to Two Brothers and pricing to CST—was required to obtain judgment on the RPA claim. Thus, even if the Court does not find that attorneys' fees are mandated by the DMAs, the Court should still award the reasonable attorneys' fees under A.R.S. § 12-341.01(A).[8]

## 2. Awarding VMSC its Requested Attorneys' Fees is Appropriate Under A.R.S. § 12-341.01(A).

An award of fees under the statute "should be made to mitigate the burden of the

---

[8] The term "attorneys' fees" in the statute also allows for recovery of fees for legal assistants and law clerks. *See Ahwatukee Custom Estates Mgmt. Assoc.,* 973 P.2d at 108. Also, the statute allows recovery of the reasonable time to prepare the fee application as it furthers the statutory purpose of mitigating the burden of litigation expenses to establish a just claim or defense. *See Gametech Intern.*, 380 F. Supp. 2d at 1101.

expense of litigation to establish a just claim or a just defense."  A.R.S. § 12-341.01(B).

The amount awarded need not equal the fees actually paid or contracted, so long as it does

not exceed the amount paid or agreed to be paid.  *Id.*  When determining whether to make

a discretionary award under the statute, courts consider the following seven factors:

> 1. The merits of the claim or defense presented by the unsuccessful party.
>
> 2. Whether the litigation could have been avoided or settled and whether the successful party's efforts were superfluous in achieving the result.
>
> 3. Whether assessing fees against the unsuccessful party would cause an extreme hardship.
>
> 4. Whether the successful party prevailed with respect to all the relief sought.
>
> 5. The novelty of the legal question presented.
>
> 6. Whether such a claim or defense had previously been adjudicated in this jurisdiction.
>
> 7. Whether the award in a particular case would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney's fees.

*Associated Indemnity Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985).  "The weight

given to any one factor is within the Court's discretion."  *Moedt v. Gen. Motors Corp.*, 60

P.3d 240, 246 (Ariz. App. 2000).  These factors favor an award of fees to VMSC.

First, VMSC prevailed on all of Plaintiffs' claims on summary judgment, relying

on well-established Arizona contract law and fuel-supply specific cases from other courts.

Second, Plaintiffs were adamant in pursuing their claims, refusing to drop even a plainly

time-barred claim by Two Brothers IV and claims by Springwells, which never became a

retail station, and resisting the attempt at settlement.  (Wolf Affidavit, ¶¶ 4-6).  VMSC's

efforts were not "superfluous" in achieving the result.  *See infra* § III.

Third, Plaintiffs have not established that awarding attorneys' fees in this case

would impose upon them any "extreme hardship."  A party opposing a fee award on

grounds of extreme financial hardship must set forth specific facts for the court to

evaluate.  *See Broschat v. Francone*, 2015 WL 7441804, at *11 (Ariz. Ct. App. Nov. 23,

QB\157951.00002\57657509.2

2015) (affirming fee award where unsuccessful party did not provide income information); *see also R. Prasad Indus. v. Flat Irons Envtl. Sols. Corp.*, 2014 WL 4722487, at *15 n.29 (D. Ariz. Sept. 23, 2014) (unsuccessful party's "declaration that he has, and has been, 'experiencing extreme financial hardship such that [he] is not able to pay any attorney fees or costs without increasing [his] extreme financial hardship.'" was insufficient to establish financial hardship) (citation omitted).

Fourth, as noted above, VMSC prevailed on all of the relief sought, achieving a complete dismissal of all claims. Fifth, although factually complex, Plaintiffs' claims were not "novel" and the Court dismissed them based on established law like the parol evidence rule. Sixth, although it is unclear whether these claims have been previously asserted in Arizona, price discrimination claims and claims related to open price term fuel contracts have been litigated regularly across the country.

Finally, an award of attorneys' fees in this case would not discourage a litigant from asserting valid contract claims relating to fuel pricing. The Station Plaintiffs have asserted the contrary, but their only basis is an argument that VMSC sold fuel contrary to alleged representations—representations that are barred by the parol evidence rule, as the Court explained in its summary judgment ruling. The Station Plaintiffs also overlook that they conceded that their RPA claim was meritless and that Two Brothers IV's tort claim was time-barred. (Doc. 135, at 2). VMSC is thus entitled to its fees under the statue.

## III.    **REASONABLENESS OF THE REQUESTED AWARD.**

Courts have held that "[w]hat constitutes a reasonable fee depends upon the type of case involved and the nature of the evidence presented." *Gametech Intern.,* 380 F. Supp. 2d at 1092 (citing *Schweiger*, 673 P.2d at 931). Under the factors outlined in Local Rule 54.2, VMSC's request—$1,781,078.75 in attorneys' fees, $445,354.09 in expert fees, and $49,209.44 in other taxable and non-taxable costs—is reasonable.

**A.      The Time and Labor Required of Counsel.**

This work intensive case has stretched on for approximately four years and required every one of the 4,343.8 hours that counsel dedicated to it.  (*See* Wolf Affidavit, ¶¶ 36-40).  As itemized and described in Exhibits 3 and 4, and the Wolf Affidavit, the time spent by counsel during the course of this litigation was reasonable given the length of the relationship, the number of parties, the number of claims, and the complexity of the facts and law.  VMSC's counsel was required to familiarize itself with ten years of events and multiple contracts, address numerous (and changing) theories of liability, depose ten witnesses, obtain discovery from 11 third parties, review and analyze tens of thousands documents, and even become acquainted with years of bankruptcy filings by eight Station Plaintiffs.  Because Plaintiffs' expert witnesses revised their expert opinions several times, VMSC's counsel also had to evaluate constantly changing damages opinions.  Moreover, VMSC's counsel had to draft a Ninth Circuit answering brief and prepare for oral argument on the Appeal.  Plaintiffs' own actions increased the complexity and cost of this lawsuit.

**B.      The Novelty and Difficulty of the Questions Presented.**

Plaintiffs' claims were not novel, but they were complex and difficult, covering three DMAs, a decade of transactions and communications, eleven Plaintiffs, and numerous individual fuel transactions.  Moreover, Plaintiffs made their claims difficult for VMSC's counsel to address.  For example, Plaintiffs presented damages calculations to Mr. Mroz, who rubber-stamped them, only to have Mr. Mroz backtrack when VMSC's expert pointed out the errors within those calculations.  (*See* Docs. 85, 96).  Mr. Mroz then presented entirely new damages calculations.  (*Id.*).  Mr. Santicola also continually revised his damages opinions and even amended them after VMSC filed its *Daubert* motion in an effort to defeat that motion and summary judgment.  (*See* Docs. 112, 131).  These tactics caused VMSC's counsel to expend more hours than otherwise would have been necessary.

QB\157951.00002\57657509.2

### C.    The Skill Requisite to Perform the Legal Service Properly.

The skills possessed by each Quarles & Brady ("Q&B") lawyer or paralegal who provided services to VMSC were reasonably appropriate and required to secure a judgment against Plaintiffs.  (*See* Wolf Affidavit, ¶¶ 2-3, 8-27).  Mr. Wolf was lead counsel, developed overall strategy, took the depositions of Plaintiffs' principals, and argued the summary judgment motions.  Mr. Howie was involved in case strategy and fact discovery but focused his efforts largely on the expert discovery, including working with experienced litigator Mr. Ott on the expert-related motions.   Both Mr. Wolf and Mr. Howie have numerous years of experience in disputes between fuel suppliers and distributors/retailers, including pricing and other claims.  Mr. Ott, of counsel, assisted in drafting numerous motions and managed expert-related evidence.  Ms. Anchors, a junior partner, directed fact discovery efforts—including research by associates and was the primary drafter of the summary judgment motions.  The associates provided important in-depth research on the Plaintiffs' shifting legal theories, obtained and reviewed documents from third parties, analyzed bankruptcy records and reviewed and analyze documents produced by VMSC. The paralegals provided essential support in discovery and depositions and hearings.  Q&B made every effort to keep a consistent team on the case, and removed from its fee request time incurred by associates and Mr. Ott (who started working on the matter later in the litigation) to familiarize themselves with the case.  Q&B also removed any entries that could be viewed as duplicative, as well as legal research time by summer associates and some junior associates.   Q&B sometimes had two attorneys at depositions and hearings, but considering the import of the events and the complexity of this litigation, these fees are not inappropriate.  *See, e.g.*, *Cheeks v. Gen. Dynamics Corp.*, 2014 WL 5465285, at *7 (D. Ariz. Oct. 28, 2014) (reasonable for "two attorneys to prepare for, and attend, a party's deposition in the instant case"); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 779 F. Supp. 1063, 1206 (D. Ariz. 1990)

QB\157951.00002\57657509.2

(participation of more than one attorney at key depositions was not inappropriate), *vacated in part*, 19 F.3d 1291 (9th Cir. 1994).[9]

### D.    The Preclusion of Other Employment by Counsel Because of the Acceptance of the Action.

Counsel for VMSC expended 4,343.8 hours on this matter.  But for this action, those hours could have been expended on other matters.

### E.    The Customary Fee Charged in Matters of the Type Involved.

The fees requested herein are reasonable.  The Fee Agreement provided that VMSC would pay: (1) a flat fee of $7,500 to prepare a removal notice and evaluate a motion to dismiss; (2) a flat fee of $30,000 for briefing and arguing a motion to dismiss; and (3) Quarles & Brady's hourly rates at a 30% discount for the remainder of the litigation.  (*See* Fee Agreement, at 2).  Significantly, the Fee Agreement provided that if Quarles & Brady obtained summary judgment in VMSC's favor on all claims, then VMSC agreed to pay a premium, resulting in a net payment of 110% of Quarles & Brady's fees at the non-discounted billing rates (giving credit for payments already made).  *Id.* at 2-3.

Arizona courts have held that such hybrid fee arrangements are permissible in Arizona so long as the fee is reasonable.  *See RCS Capital Development, LLC v. A.B.C. Dev. Learning Centers (U.S.A.)*, 2012 WL 2115377, at *11 (Ariz. App. June 12, 2012).  In *RCS Capital*, the court ultimately rejected an award of an "enhancement fee" because counsel's "hourly rate ***had not been reduced*** in exchange for the enhancement fee. Therefore, the enhancement fee was more than a simple compensation for services rendered."  *Id.* at *10 (emphasis added).  That is not the case here.  Instead, Quarles & Brady substantially reduced its fees by billing initial work on a flat fee and agreeing to a 30% rate discount on all subsequent work, in exchange for the possibility of a premium if VMSC prevailed on summary judgment.  Moreover, Quarles & Brady's rates throughout

---

[9] Indeed, Plaintiffs generally had two attorneys at depositions and hearings as well.

this matter, even at 110%, are reasonable.  (*See* Wolf Affidavit, ¶¶ 29-32); *see also Maricopa County v. Office Depot, Inc.*, 2017 WL 1957882, at \*\*4, 7 (D. Ariz. May 11, 2017) (finding hourly rates of $240 to $575 for local Arizona counsel, $639 and $545 for D.C. counsel to be reasonable because the client agreed to pay those rates, and the client's choice of the firm with its "experience with similar litigation was a prudent choice").

Exhibits 3 and 4 set forth the time, a description of the work, the billing rate, and the fees incurred for each attorney or paralegal.  Counsel's billing practices and procedures are within normal business operations and its rates are in accordance with rates charged by other lawyers and legal assistants in this community with similar experience and education. (*See* Wolf Affidavit, ¶¶ 29-30, 35-40).

**F.      Whether the Fee Contracted between the Attorney and the Client is Fixed or Contingent.**

The fees that VMSC has agreed to pay Quarles & Brady are a hybrid of fixed, hourly and contingent fees.  (*See* Fee Agreement).

**G.      Any Time Limitations Imposed by the Client or the Circumstances.**

There were no time limits imposed by the client or circumstances.

**H.      The Amount of Money, or the Value of the Rights, Involved, and the Results Obtained.**

Plaintiffs sought $30 million in damages.  In his initial report, Mr. Santicola opined that Plaintiffs suffered nearly $16 million in damages, and Mr. Mroz initially contended that Two Brothers suffered $12-$14 million in damages.  Damages under an RPA claim are trebled, meaning VMSC faced exposure of *$90 million*.  In this context, the hours expended by VMSC's counsel were reasonable.

**I.      The Experience, Reputation and Ability of Counsel.**

VMSC's counsel had the necessary experience and ability to represent VMSC in this litigation, demonstrated by the results achieved.  (*See* Wolf Affidavit, ¶¶ 8-27).

1

**J.     The "Undesirability" of the Case.**

2

Not applicable.

**K.     The Nature and Length of the Professional Relationship.**

3

4

There was no prior professional relationship between VMSC and Quarles & Brady,

5

indicating that that the Fee Agreement was a reasonable, arms-length transaction.

6

**L.     Awards in Similar Actions.**

7

Cases of this complexity, including fuel pricing disputes, result in substantial fee

8

awards.   In *Mathis v. Exxon Corporation*, 302 F.3d 448 (5th Cir. 2002), gas station

9

franchisees asserted similar claims for breach of contract and the open price term.  *Id.* at

10

451. [10]   Following a jury verdict for plaintiffs, the court awarded attorneys' fees of

11

$2,289,462, which the Fifth Circuit held to be reasonable.  *Id.* at 461-62.  Although there

12

was no trial here, this matter is more than 15 years later, and VMSC is seeking over

13

$500,000 less than what was awarded in *Mathis*.  In *Hasbrouck v. Texaco, Inc.*, 879 F.2d

14

632 (9th Cir. 1989), the court affirmed an award of about $1.3 million in attorneys' fees in

15

an RPA case brought by retail service stations.  The court also affirmed an enhancement

16

of the fees by a third due to the difficulty of RPA claims.  *Id.* at 637, 639-40.  Although

17

the case involved two trials, the case also decided almost 30 years ago.  *Mathis* and

18

*Hasbrouck* indicate that VMSC's requested attorneys' fees and costs are reasonable. [11]

**IV.     CONCLUSION.**

19

20

For the foregoing reasons, the Court should award VMSC $1,781,078.75 for

21

attorneys' fees, $445,354.09 for expert fees, and $49,209.44 in other taxable and non-

22

taxable costs.

23

24

[10] Although the Texas Supreme Court rejected *Mathis* on the bad-faith claim (*Shell Oil Co. v. HRN*, 144 S.W.3d 429, 435-36 (Tex. 2004)), the *Mathis* fee ruling is still good law.

25

[11] The fee award in *Mathis*, which was granted under a Texas fee-shifting statute analogous to A.R.S. § 12-341.01(A), did not include an award of expert fees; however, VMSC seeks expert fees under a contractual provision.

26

QB\157951.00002\57657509.2

1     RESPECTFULLY SUBMITTED this 24th day of May, 2019.

2                                        QUARLES & BRADY LLP
                                         Renaissance One Square
3                                        Two North Central Avenue
                                         Phoenix, AZ  85004-2391
4

5

6                                        By /s/ Jeffrey H. Wolf
                                            Jeffrey H. Wolf
7                                           Brian A. Howie

8                                        *Attorneys for Defendant Valero Marketing
                                         and Supply Company*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

QB\157951.00002\57657509.2

1

### CERTIFICATE OF SERVICE

2          I hereby certify that on May 24, 2019, I electronically transmitted the attached

3  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4  Notice of Electronic Filing to all counsel identified on the Court-Generated Notice of

5  Electronic Filing.

6

7

8  */s/ Debra L. Hitchens*            __

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

QB\157951.00002\57657509.2