Shorall McGoldrick Brinkmann
1232 east missouri avenue
phoenix, az 85014-2912
602.230.5400
602.230.5432 (fax)
smb@smbattorneys.com

Tom Shorall Jr., #010456
Scott M. Zerlaut, #014714
Attorneys for Plaintiffs

Rudolph & Hammond LLC
8689 east san alberto drive
Scottsdale, az 85258
480.951.9700
480.951.1185 (fax)
kurt@rudolphhammond.com

Kurt E. Hammond, #012738
Attorneys for Plaintiffs

## In the United States District Court

## For the District of Arizona

| | |
|---|---|
| Two Brothers Distributing Inc., an Arizona corporation; et al., | 2:15-cv-01509-DGC |
| Plaintiffs, | **Response to VMSC's Renewed Motion for an Award of Attorneys' Fees and Costs [Doc. 174]** |
| v. | |
| Valero Marketing and Supply Company, a foreign corporation, | |
| Defendant. | |

Plaintiff Two Brothers Distributing ("TBD") respectfully urges this Court to exercise its discretion to reduce the amount of attorneys' fees[1] and litigation costs awarded against it

---

[1] Henceforth, *fees* refers attorneys' fees, litigation costs (including expert fees), and anything else that VMSC calls "costs of suit."

1

so that only a reasonable amount is awarded to VMSC. It is not clear whether VMSC also seeks an award of fees against the TB Stations. To the extent that it does, no fees should be awarded for legal work in the District Court after the Stations' contract-based claims and third-party-beneficiary claims were dismissed. [*See* Doc. 26.][2] The TB Stations further urge this Court to exercise its discretion to reduce the amount of attorneys' fees incurred before those claims were dismissed.

## I. The TB Stations

First, whether VMSC is entitled to an award of fees against TBD for work "interwoven" with the TB Stations' claims is separate and distinct from whether and to what extent fees can be awarded against the Stations.

Second, VMSC's motion does not even appear to ask for fees from the TB Stations. Its motion expressly states "Defendant Valero Marketing and Supply Company ('VMSC') moves for an award of attorneys' fees and costs of suit pursuant to the Distributor Marketing Agreements (the 'DMAs') between VMSC and Plaintiff Two Brothers Distributing Inc. ('Two Brothers') or, alternatively, under A.R.S. § 12-341.01(A)." [Doc. 174 at 1:19-22.] The conclusion to its Memorandum of Points and Authorities states only: "For the foregoing reasons, the Court should award VMSC . . . attorneys' fees . . . ." [*Id.* at 17:20-

---

[2] However, the Stations did seek appellate review of this Court's dismissal of their third-party-beneficiary claims, and hence acknowledge that fees may be awarded against them related to addressing these arguments on appeal. [*See* Ninth Circuit Memorandum Decision at 6, ¶ 6.] The Stations ask this Court to use its discretion to not award those fees or to substantially reduce the amount awarded under A.R.S. § 12-341.01.

22.] But if VMSC is also seeking an award of fees against the Stations, then those fees should be limited to what was incurred before the Stations' contract-based claims were dismissed on November 25, 2015. [*See* Doc. 26.] According to VMSC's fee ledger, its attorneys' fees up to that date total $91,556 [Doc. 174-2 at 3-16]—a small fraction of the total amount claimed. Its experts' work was all performed after that date, too. [Docs. 158-5 and 158-6.]

The TB Stations also urge this Court to use its discretion to deny or reduce the award for fees incurred before that date.

**A. Any award of attorney fees against the TB Stations must be limited to those fees incurred before this Court dismissed their contract-based and third-party-beneficiary claims in November 2015 or incurred in the appeal to the Ninth Circuit.**

The inescapable fact is that the Stations are not themselves parties to any contract with VMSC.[3] Hence, except to the extent that they claimed that they were parties or that they claimed that they were third-party beneficiaries, contract-based attorneys' fees cannot be awarded against them under either the DMAs or A.R.S. § 12-341.01(A). *See Dubray Land Serv. Inc. v. Mesa Commc'n Group*, 16 Fed. Appx. 936, 938 (9th Cir. 2006) (noting that contractual-fee provisions only apply to parties to that contract). This Court dismissed the Stations' contract-based claims, both direct and based on third-party beneficiary status, on

---

[3] It is undisputed that the Stations were not parties to the DMAs or the Branding Agreements, and that is why their contract claims were dismissed. [Doc. 26 at 5-6.]

November 25, 2015. [Doc. 26.] Hence, those claims were no longer at issue in the District Court after that date.[4]

VMSC maintains that it is also entitled to attorneys' fees for successfully defending the TB Stations' tortious-interference claims because they are "interwoven" with TBD's contract claims. But the tortious-interference claims arise out of the contracts between TBD and the TB Stations, not any contract with VMSC. And the allegations of predatory pricing of fuel to TBD—the predicate for the tortious-interference claims—could have existed absent any contract between TBD and VMSC.

Moreover, the law does not support VMSC's argument. Arizona law controls the award of attorneys' fees in this case. *Northon v. Rule*, 637 F.3d 937, 938 (9th Cir. 2011); *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 218 (9th Cir. 2013). Arizona courts expressly hold that tortious-interference claims arise out of law, not contract, and therefore do not give rise to fee awards. *Bar J Bar Cattle Co. v. Pace*, 158 Ariz. 481, 483, 763 P.2d 545, 547 (App. 1988).

In *Bar J Bar*, the superior court entered summary judgment for the defendant on the plaintiff's tortious-interference claim. It then denied the defendant's fee claim, although it held that it did have discretion to award fees. *Id.* The court of appeals sustained the denial of fees, but it held that the superior court was wrong when it asserted that it had discretion to award them. *Id.*

---

[4] Those claims were reasserted on appeal, however. The fee request related to work on the appeal is addressed in Section III, below.

The *Bar J Bar* court acknowledged that attorneys' fees may be awarded under A.R.S. § 12-341.01 for work done defending or prosecuting a tort claim where a "single act constitutes both a tort and a breach of contract," but only if the tort "could not have existed but for the breach of contract." *Id.* at 486, 763 P.2d at 550 (citing *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127 (1982)). But "where the claim at issue arises out of a breach of a duty of law rather than a contract between the parties, fees may not be awarded." *Id.* The court then expressly held that a tortious-interference claim arises out of law, not contract:

> The duty not to interfere with the contract of another arises out of law, not contact. In fact, the tort may be committed even when the plaintiff has no contractual rights but simply the prospect of a contractual relationship.

*Id.* (citing Restatement (Second) of Torts § 766B, cmt. c);[5] *see also Four Seas Prop. Mgmt. v. Bruce and Ann Brown LP*, 2105 WL 2410114 (Ariz. App. 2015) (unpublished decision following *Bar J Bar*); *Stilwell v. City of Williams*, 2014 WL 1654530, fn. 10 (D. Ariz. 2014) (unpublished decision following *Bar J Bar*).

Although the Plaintiffs alleged that VMSC's acts both breached its contract with TBD and tortuously interfered with the Stations' business expectancies, these are separate claims asserted by separate parties with different relationships to VMSC and the DMAs, and they arise out of separate duties (one contractual and one legal).

---

[5] Similarly, VMSC's duty to the TB Stations to not violate the Robinson-Patman Act in setting fuel prices arises out of that law, not the contract, notwithstanding TBD's open-price term/breach-of-contract claim.

While VMSC cites *Killingsworth v. State Farm Mut. Auto. Ins. Co.*, 2006 WL 381682 (D. Ariz. 2006) (unpublished) for its argument that the TB Stations' tortious-interference claim supports a fee award, that case actually supports the TB Stations. According to VMSC, that court held that fees can be awarded for tortious interference when the "interference with contract collapses into the claim of breach of contract itself"—arguing that is what happened in the TB Stations' case. [Doc. 174 at 6, fn. 6.] But VMSC takes that quote out of context, and that case is distinguishable.

In *Killingsworth*, the plaintiff sued his employer State Farm and his manager. He alleged a variety of contract-based claims against State Farm and sued his manager for tortious interference. The district court dismissed the tortious-interference claim because the manager was acting in the course and scope of his employment and therefore was not an outsider to the contract—a requirement for sustaining a tortious-interference claim. *Id.* at *1. The district court awarded attorneys' fees to the manager because, as an insider and manager acting in the course and scope of his employment, he was effectively a party to the contract that he allegedly interfered with. It was in those unique circumstances that "the supposed tort of interference with the contract collapses into the claim of breach of contract itself." *Id.* at * 2.

There was no similar finding in this case—to the contrary, this Court already expressly held that the TB Stations were not party to the contracts being sued upon. [Doc. 26.] And this Court dismissed the tortious-interference claims, not because the TB Stations were insiders, but because the TB Stations could not prove that VMSC acted wrongfully or

interfered with any reasonable expectations. Hence, *Killingsworth* does not apply, and VMSC has offered no other authority—published or unpublished—supporting its argument.

### B. Any attorneys' fee award against TB Stations must be based upon A.R.S. § 12-341.01(A), which gives this Court discretion to deny or reduce the amount awarded.

Although this Court may lack discretion to deny a fee award under the DMAs' fee provisions, *see McDowell Mountain Ranch Cmty. Ass'n v. Simons*, 216 Ariz. 266, 269, ¶ 14, 165 P.3d 667, 670 (App. 2007), it does have such discretion under § 12-341.01(A). *Am. Const. Corp. v. Philadelphia Indem. Ins. Co.*, 667 F. Supp. 2d 1100, 1106 (D. Ariz. 2009). There is no entitlement to an award of fees under § 12-341.01(A). *Ader v. Estate of Felger*, 240 Ariz. 32, 45, ¶ 48, 375 P.3d 97, 110 (App. 2016). Moreover, unlike under a contractual-fee provision, the party seeking fees under § 12-341.01 bears the burden to prove that it is entitled to those fees, and to prove a reasonable amount. *Woerth v. City of Flagstaff*, 167 Ariz. 412, 419, 808 P.2d 297, 304 (App. 1990). And because the purpose of awarding fees under § 12-341.01 is to "mitigate the burden of the expense of litigation," § 12-341.01(B), the award need not equal or even relate to the amount charged or paid—but it cannot exceed that amount. *Id.*

When determining whether to grant a fee award (and deciding how much to award), the courts can give consideration to the successful party's settlement efforts, whether a fee award would discourage other tenable claims, and whether assessing fees would cause extreme hardship on the unsuccessful party. *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985). The weight to give to any such considerations is within the

courts' discretion. *Moedt v. Gen. Motors Corp.*, 204 Ariz. 100, 105, 19, 60 P.3d 240, 245 (App. 2002).

Because the Stations are not parties to the DMAs, any fees awarded against them must be based upon A.R.S. § 13-341.01(A). The TB Stations respectfully urge this Court to use that discretion to deny, or at least substantially reduce, the fees awarded to VMSC because any award would cause extreme financial hardship to the Stations. This Court should also consider the excessive amount of time spent on motions and oral argument when deciding a reasonable award, just as it should with respect to TBD (*see* Section II, below).

The *American Construction* court put "substantial weight" on the "discouraging tenable claims" factor when it concluded that the prevailing party's "conduct in this case fell short of honesty in fact and does not deserve encouragement here or elsewhere." 677 F. Supp. 2d at 1107. In the present case, although this Court may have decided that VMSC's actions were not illegal and are without a legal remedy, the facts demonstrate that VMSC acted in a predatory fashion towards TBD and the TB Stations and effectively used them as a stalking horse to establish its brand in the market and then priced them out of competition. That too is "short of honesty in fact" and should not be encouraged.

This Court should also be influenced by the Plaintiffs' repeated attempts to mediate this case, and VMSC's absolute refusal to do so. Although VMSC and its attorneys participated in court-ordered informal settlement talks, they did not so in good faith and completely refused to discuss a compromise of any sort. The affidavit of attorney Kurt

Hammond, counsel for Plaintiffs, attests to his efforts to mediate and VMSC's refusal to do so. [Doc. 168-1.]

Finally, the Court should find compelling the extreme financial hardship that the TB Stations will suffer from a fee award. Elizabeth Shinohara was an officer and director of the TB Stations. Her testimony demonstrates that, to survive Chapter 7 bankruptcy, the Stations (those that actually survived) were forced to incur substantial additional debt, secured by additional deeds of trust. And she establishes that based on the Stations' operating expenses, the cost to service this debt, and their mostly-negative net cash flow, they cannot obtain additional financing. Any significant fee judgment will put them out of business. [Doc. 168-2.] This sufficiently demonstrates hardship to justify this Court in using its discretion to deny or reduce a fee award against the Stations.

**C.**    **No expert fees should be awarded against the TB Stations, and any non-taxable litigation expenses—if awarded—should only be based upon those incurred before this Court dismissed the TB Stations' contract-based claims.**

Review of VMSC's experts' billing statements, appended to VMSC's fee application [Docs. 158-5 and 158-6], shows that all of their time was incurred after November 25, 2015, the date that this Court dismissed the Stations' contact-based claims. [Doc. 26.] Hence, those fees should not be awarded against the TB Stations. Further, Noel's expert fees should not be awarded because his billing statements make it impossible to determine what tasks were performed, which makes it impossible to determine the extent to which they are reasonable and whether they are duplicative or excessive. (This argument also applies in TBD's favor.)

Similarly, if this Court allows fees against the TB Stations, then non-taxable litigation costs—like attorneys' fees—should be limited to those incurred before November 25, 2015. Those non-taxable fees total $550.45. [Doc. 158-3, at 213].[6]

## II. The amount of TBD's liability for fees is also subject to discretion.

The *Branded Distributor Marking Agreements* ("DMAs") between VMSC and TBD contain substantially identical attorneys' fee provisions. For instance, paragraph 20(B) of the 2010 DMA states the following:

> In the event of any lawsuit between VMSC and Distributor [TBD] arising out of or relating to the transactions or relationship contemplated by this Agreement (regardless whether such action alleges breach of contract, tort, violation of a statute or any other cause of action), the substantially prevailing party shall be entitled to recover its reasonable costs of suit including its reasonable attorneys' fees. If a party substantially prevails on some aspects of such action but not others, the court may apportion any award of costs or attorneys' fees in such manner as it deems equitable.

Plaintiff TBD acknowledges that VMSC is entitled to an award of *reasonable* attorneys' fees and litigation expenses under this provision. But while this Court might not have discretion to deny an attorneys' fee award against TBD, it does have discretion to determine what constitutes a reasonable amount to award. *See McDowell Mountain Ranch Cmty. Ass'n v. Simons*, 216 Ariz. 266, 269, ¶¶ 14, 17-20, 165 P.3d 667, 670 (App. 2007).

VMSC asks the Court to award it $1,625,394 in attorneys' fees incurred before appeal. Review of VMSC's attorneys' fee ledger [Doc. 158-3] demonstrates on its face that that

---

[6] The costs and disbursements reflected in Doc. 158-3 for that period also include $400.00 for the filing fee to remove this case to the district court. That expense is a taxable cost and should not be included in an award of non-taxable costs.

amount is patently unreasonable because the amount of time spent preparing various motions and preparing for oral argument is excessive and often duplicative.

Although LRCiv 54.2(f) requires a party opposing a fee application to "separately identify each and every disputed time entry or expense item," that is not practical in this case. With few limited exceptions, TBD and the Stations are not asserting that time was incurred for services that are not properly the subject of fee award, so there is little to specifically point out. Rather, they assert that the time charged is unreasonably excessive and duplicative in total. Moreover, there is also a difference between what is reasonable to charge a client, which is controlled by the fee agreement, and what is reasonable to try to foist on the adverse party.

*Motion to dismiss*. VMSC's counsel spent 86 hours, charging $33,090, to prepare a motion to dismiss *before* complying with the Court's order [Doc. 6] to meet and confer before filing a motion to dismiss. Six separate billing professionals billed this time between July 14 and August 24, 2015. That meeting, when it occurred, resulted in Plaintiffs' agreeing to amend their complaint on August 31, 2015.

Defense counsel then spent an additional 37.4 hours, and $15,435 in attorneys' fees, finalizing the motion to dismiss the first amended complaint [Doc. 16.] That time was incurred between August 31 and October 23, 2015.

Hence, VMSC's attorneys spent *123 hours* and $48,525 preparing a motion to dismiss.

*Reply to motion to dismiss*. Similarly, between October 30 and November 9, 2015, VMSC's attorneys spent an additional 35 hours and $12,210 preparing VMSC's reply. Then,

on November 25, 2015, two senior partners, Jeffrey Wolf and Brian Howie, *each* billed 1.1 hours *analyzing* this Court's order [Doc. 26] deciding the motion to dismiss.

*Answer to second amended complaint.* Then, between December 18, 2015, and January 7, 2016, VMSC's attorneys spent 17 hours and $7,932 preparing VMSC's answer [Doc. 31] to the second amended complaint [Doc. 29]. That answer consists almost entirely of simple admissions and denials of Plaintiffs' allegations—most of which were already asserted in the prior complaints and addressed in the motion to dismiss.

**Daubert** *motion.* VMSC's attorneys used seven billing professionals between September 13, 2016, and January 31, 2017 (a 5.5-month period), to prepare its *Daubert* motion [Doc. 112]—spending 131 hours and incurring $54,890 in fees just on that motion alone.

*Motions for summary judgment and replies.* Then, VMSC's counsel used eight billing professionals to spend 332 hours and $119,000 to prepare the motions for summary judgment.

They then spent 97 hours and $81,449 to prepare the replies. This time included using six billing professionals to spend 29 hours to review and analyze Plaintiffs' responses, and 21 hours were spent on legal research—on issues already briefed in the motion to dismiss and later in the motions for summary judgment. And they used six billing professionals to spend 72 hours *reviewing and revising* the reply before filing it.

During this period, on March 29 and March 30, 2017, attorney Rodney Ott billed 9.4 hours for "strategy discussions re: reply to MSJ." These time entries fail to identify who

these discussions were with, and make it difficult to conceive what might have been discussed for 9.4 hours.

*Preparing for oral argument on motions.* Perhaps most remarkable is the excessive time spent and billed preparing for oral argument on the *Daubert* and summary-judgment motions. VMSC's attorneys used nine billing professionals, and spent 302 hours and billed $122,637 on this task. They began preparing on July 18, 2017, three months before the hearing. That time included 60 hours of legal research, billing $20,168, on legal issues already addressed and raised in the motions.

*Fee application.* VMSC's counsel billed 109 hours and charged $40,271 to prepare it fee application. This included 49 hours of legal research regarding the well-established law related to attorneys' fees awards.

*Other specific examples of overbilling.*

The fee ledger is replete with examples where Wolf, Howie, and Anchor are all working on the same tasks in a manner that exceeds partner review of associate's work. Rather it demonstrates duplicative efforts and billing inefficiencies for which Plaintiffs should not have to pay.

For example, Anchors and Wolf both billed for taking Saad Saad's depositions on August 10 and August 11, 2016. Wolf spent 19 hours and billed $9,405. Anchor spent 18 hours and billed $5,514. Similarly, Anchor and Wolf both billed and charged for taking Ali Saad's deposition on August 17, 2017. Wolf billed $3,816 for 8 hours, and Anchor billed $1,705 for 5.5 hours. Then on September 1, 2016, Wolf billed for 3.5 hours and Anchor

billed for 3.5 hours for the continuation of Saad Saad's deposition. Only Wolf actually examined Saad during these depositions.

And a minor, but telling, example of VMSC's attorneys' billing carelessness: on October 31, 2016, attorney Daniel G. Roberts billed .4 hours and $102 to "perform final edits and revisions to response memo in opposition to plaintiffs' motion to exclude expert testimony." Plaintiffs never filed such a motion.

### III. The attorneys' fees sought on appeal are excessive. At the least, this Court should exercise its discretion to limit the amount of those fees awarded for all of the reasons stated above.

VMSC's attorneys'-fee motion does not explicitly articulate the amount incurred on appeal, but that can be roughly determined simply by subtracting the amount incurred in their initial motion [Doc. 158] from the amount sought in the present motion [Doc. 174]. That difference is $155,684.65. The invoice for these fees is found at Doc. 174-3.

This difference also reflects time incurred related to replying in support of the initial fee application. The fees claimed that relate just to that effort are $18,494. [Doc. 174-3.] That amount also seems excessive on its face.

Moreover, VMSC claims $3,096.50 corresponding with the Ninth Circuit Mediation Coordinator to state its position that mediation would not be fruitful. [Doc. 174-3 at 5-6 (11/20 to 11/27/2019).] That is an unreasonable amount to claim, particularly since it all it had to do was inform the Coordinator that it was not interested in mediation.

On February 20, 2018, TBD and the TB Stations filed a two-paragraph motion to extend the time to file their opening brief. [CA9 Dckt. 13.] VMSC filed a three-page

response agreeing to an extension. [CA9 Dckt. 14.] But VMSC claims that its attorneys spent 3.2 hours and incurred $1,248.70 preparing this three-page response. [Doc. 174-3 at 6-7 (2/21 to 2/22/18).]

The amount claimed related to the appeal itself also seems grossly excessive in light of the fact that the appellate briefs largely tracked the issues and arguments in the summary-judgment motions. [*See* CA9 Dckt. 17 and 34.] Hence, most of the work was already substantially completed.

For instance, VMSC seeks reimbursement for time claimed for four lawyers to initially review the opening brief [Doc. 174-3 at 7-8.] Two lawyers billed $1,540.50 for the same "strategy meeting" on May 3, 2018. One billed for 1.9 hours. The other billed 1.5. [Doc. 174-3 at 9.] Three lawyers billed for reviewing the reply brief. [Doc. 174-3 at 13.]

In short, as with the fees claimed for litigating in the District Court, although no time entries are excessive, duplicative, or unreasonable standing alone, they are unreasonable in their totality.

## Conclusion

A fee award against TBD should be limited to an amount that this Court deems reasonable, taking into account the excessive time VMSC's counsel spent on a variety of tasks. No award should be made against the TB Stations. But if this Court disagrees, that award should be based only upon those fees incurred before November 25, 2015, and on appeal, and should reflect a reasonable amount taking into consideration VMSC's attorneys'

excessive time, VMSC's refusal to mediate, and the extreme financial hardship a fee

judgement would work on the TB Stations.

Dated June 7, 2019.

Shorall McGoldrick Brinkmann

/s/ Scott M. Zerlaut
Scott M. Zerlaut
Attorneys for Plaintiffs

**Certificate of Service**

The foregoing was filed and served upon the following through the US District Court

for the District of Arizona's CM/ECF Electronic Filing System on June 7, 2019:


**For VMSC:**

Jeffrey H. Wolf
Brian A. Howie
Quarles & Brady LLP
Renaissance One
Two North Central Ave.
Phoenix, AZ 85004-2391
Jeffrey.wolf@quarles.com
Brian.howie@quarles.com
Sarah.anchors@quarles.com
Rodney.ott@quarles.com

**Co-Counsel for Plaintiffs:**

Kurt E. Hammond
Rudolph & Hammond LLC
8689 E. San Alberto Dr.
Scottsdale, AZ 85258
kurt@rudolphhammond.com


/s/ Chrissy Verdino