**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Two Brothers Distributing Incorporated, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Valero Marketing and Supply Company,<br><br>Defendant. | No. CV15-1509-PHX-DGC<br><br>**ORDER** |

Plaintiffs Two Brothers Distributing, Inc. ("Two Brothers") and ten associated gasoline retailers (the "Station Plaintiffs") sued Valero Marketing and Supply Company ("Valero") asserting various claims. Doc. 29. The Court granted summary judgment for Valero on all claims, and the judgment was affirmed on appeal. Docs. 155, 161, 172.

Valero has filed a motion for attorneys' fees and litigation costs. Doc. 174. The motion is fully briefed, and no party has requested oral argument. Docs. 175, 177. The Court will grant the motion in part and award Valero $1,579,124.37 in attorneys' fees, $310,862.77 in expert fees, and $48,809.44 in other litigation costs.

**I.  Background.**

Two Brothers and Valero executed multiple distributor marketing agreements ("DMAs") between 2007 and 2016 for the sale of gasoline. Doc. 155 at 2-4.[1] These DMAs

---

[1] Citations are to page numbers attached to the top of pages by the Court's ECF system, not to original numbers at the bottom of pages.

included an open price term which stated that Two Brothers "shall pay to [Valero] that price specified by [Valero] from time to time." *Id.* at 2-3. After purchasing gasoline from Valero, Two Brothers would sell it to the Station Plaintiffs. Doc. 29 ¶ 4.

Plaintiffs filed this case in May 2015 alleging that Valero manipulated the open price term to overprice the gasoline it sold to Two Brothers. Doc. 1-1. Plaintiffs asserted that Valero sought to decrease Plaintiffs' profits and drive them from the Maricopa County market. Doc. 155 at 5.

The DMAs provide for the award of litigation costs in the event of a suit between Two Brothers and Valero:

> Attorneys' Fees. In the event of any lawsuit between [Valero] and [Two Brothers] arising out of or relating to the transactions or relationship contemplated by this Agreement (regardless whether such action alleges breach of contract, tort, violation of a statute or any other cause of action), the substantially prevailing party shall be entitled to recover its reasonable costs of suit including its reasonable attorneys' fees. If a party substantially prevails on some aspects of such action but not others, the court may apportion any award of costs or attorneys' fees in such manner as it deems equitable.

Doc. 115-2 at 126 (2007 DMA), 214 (2010 DMA); *see also* Doc. 16-2 at 86-87 (2013 DMA containing substantially similar provision); Doc. 115-2 at 264-65 (2016 DMA containing substantially similar provision).

Valero's renewed motion requests $1,781,078.75 in attorneys' fees, $445,354.09 in expert fees, and $49,209.44 in other litigation costs. Doc. 174 at 2. Valero supports its motion with a certificate of consultation, the terms of counsel's representation, itemized billing records and invoices, and an affidavit from lead counsel Jeffrey Wolf. Docs. 174-1 to -4.

**II.     Legal Standards.**

Under Arizona law, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01(A). Fees may be awarded at the trial court's discretion. *See Andra R Miller*

*Designs LLC v. US Bank NA*, 418 P.3d 1038, 1045 (Ariz. Ct. App. 2018).

Section 12-341.01(A) does not apply when parties "have provided in their contract the conditions under which attorneys' fees may be recovered." *Am. Power Prods., Inc. v. CSK Auto, Inc.*, 396 P.3d 600, 604 (Ariz. 2017). An award of attorneys' fees governed by a contract is mandatory, *Castle v. Barrett-Jackson Auction Co., LLC*, 276 P.3d 540, 544 (Ariz. Ct. App. 2012), and enforced according to the terms of the contract, *F.D.I.C. v. Adams*, 931 P.2d 1095, 1105 (Ariz. Ct. App. 1996). But "a contractual provision providing for an award of unreasonable attorneys' fees will not be enforced." *See McDowell Mountain Ranch Cmty. Ass'n, Inc. v. Simons*, 165 P.3d 667, 671 (Ariz. Ct. App. 2007). The Court may consider several factors in assessing reasonableness. *See* LRCiv 54.2(c)(3)(A)-(M).

### III. Fees Related to Two Brothers' Claims.

Plaintiffs concede that the DMAs require an award of reasonable attorneys' fees and litigation expenses. Doc. 175 at 10. Plaintiffs challenge the reasonableness of the requested legal fees. Doc. 175 at 10.

Courts consider the following factors when addressing the reasonableness of a proposed attorneys' fee award: (1) time and labor required of counsel; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by counsel because of the acceptance of the action; (5) customary fee charged in matters of the type involved; (6) whether the fee contracted between the attorney and the client is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount of money, or the value of the rights, involved and the results obtained; (9) experience, reputation and ability of counsel; (10) "undesirability" of the case; (11) nature and length of the professional relationship between the attorney and the client; (12) awards in similar actions; and (13) any other matters deemed appropriate under the circumstances. LRCiv 54.2(c)(3).

Valero argues that these factors show the requested fees to be reasonable. Doc. 174 at 12-17. Specifically, it asserts that over four years the attorneys on the case familiarized

themselves with ten years of events, multiple contracts, and numerous theories of liability, and analyzed tens of thousands of documents, including years of bankruptcy filings by eight of the Station Plaintiffs. Doc. 174 at 13. Further, counsel deposed ten witnesses and obtained discovery from eleven parties. *Id.* Valero argues that although Plaintiffs' claims were not novel, they were factually complex, covering a decade of transactions and communications and eleven Plaintiffs. *Id.* The legal team possessed years of experience dealing with disputes between fuel suppliers and distributors and retailers. *Id.* at 14. Valero's legal counsel's rates are reasonable and in accord with lawyers and legal professionals in this community with similar experience. *Id.* at 16. The hours expended were reasonable because Plaintiffs sought nearly $30 million in damages. *Id.* And the requested fee is consistent with cases dealing with similar issues and complexity. *Id.* at 17.

Plaintiffs do not challenge these arguments. *See* Doc. 175 at 10-15. Nor do they challenge counsel's billing rates. *See id.* Plaintiffs instead assert that the overall time charged is excessive and duplicative, but that it is not practical to identify each and every disputed time entry or expense item. *Id.* at 11. They instead proceed to summarize the number of hours Valero's counsel spent on various tasks without explanation as to why those hours were excessive and unreasonable and without offering any alternatives. *Id.* at 11-13. The Court will address only the tasks challenged by Plaintiffs, and will accept Valero's time records on all other tasks as reasonable. *See* LRCiv 54.2(3)(f) (attorney opposing a motion for an award of attorneys' fees shall separately identify each and every disputed time entry or expense item).

**A. Motion to Dismiss.**

Plaintiffs note that Valero's counsel spent 86 hours preparing its motion to dismiss before conferring with Plaintiffs to identify curable deficiencies. *Id.* at 11. After Plaintiffs filed an amended complaint, Valero's counsel spent another 37.4 hours on the motion before filing it. *Id.* Plaintiffs appear to argue that spending substantial time both before and after the conference was unreasonable. *See id.*

Valero counters that the 86 hours of work before the conference were necessary to

facilitate a meaningful discussion. Doc. 177 at 9. After that discussion, Plaintiffs only withdrew one claim and actually added two new claims. *Id.* The 37.4 hours after the conference were not spent finalizing the motion, but researching and addressing the new claims. *Id.* Valero emphasizes that the hours were necessary to address the "nine legally complex claims" in the complaint and to draft a 23-page motion with approximately 200 pages of exhibits. *Id.*

Valero also argues that Plaintiffs have failed to comply with Local Rule 54.2, which requires the opposing party to "separately identify each and every disputed time entry or expense item." Doc. 177 at 7-8. Nor does Plaintiffs posit what amount of time would have been reasonable in light of the nature of the case. *Id.* at 8.

The Court will not reduce the hours spent on the motion to dismiss. Plaintiffs have not explained which hours or tasks were unreasonable, and the Court cannot conclude that the total hours were excessive when the case included multiple, complex claims. Nor can the Court conclude that hours devoted before the conference were excessive. To explain why they thought Plaintiffs' claims were subject to dismissal, Defendants were required to analyze those claims. The conference did not eliminate most of the claims on which work had been performed, and added two more claims that required additional work. Plaintiffs have not shown that the time spent on the motion to dismiss was excessive.

### B. Reply in Support of Motion to Dismiss.

Plaintiffs note that Valero's counsel spent 35 hours preparing its reply in support of its motion to dismiss. Doc. 175 at 11. Then, two senior partners each billed 1.1 hours analyzing the Court's motion to dismiss order. *Id.* at 12. Valero counters that Plaintiffs have failed to identify any specific time entry that was inadequate. Doc. 177 at 9. Further, they fail to explain why it was unreasonable for the "two lead partners on a multi-million dollar case to familiarize themselves with the Court's 11-page order, which resolved what claims would remain in the case, provided [Valero] with information about the Court's view of those claims, and helped refine arguments ultimately renewed at the summary judgment stage." *Id.*

Plaintiffs have not shown the time devoted to the reply brief to be excessive. Nor have Plaintiffs shown that it was unnecessary for two lead attorneys to spend a total of 2.2 hours familiarizing themselves with the Court's order.

**C.     Answer to the Second Amended Complaint.**

Plaintiffs argue that spending 17 hours to prepare Valero's answer to the second amended complaint was unreasonable given that it "consists almost entirely of simple admissions and denials of Plaintiffs' allegations – most of which were already asserted in the prior complaints and addressed in the motion to dismiss." Doc. 175 at 12. Valero counters that the complaint was 112 paragraphs and that Valero's counsel needed to discuss each denial and affirmative defense with its client. Doc. 177 at 10.

The Court does not agree with Plaintiffs' argument. This time amounted to less than ten minutes per paragraph of the complaint, and an answer requires more than quickly admitting or denying allegations. The answer is a critical pleading in the case that affects the defense and its strategy. The Court will not reduce this time.

**D.     *Daubert* Motion.**

Plaintiffs note that Valero's counsel used seven billing professionals to bill 131 hours over 5.5 months to prepare its *Daubert* motion. Doc. 175 at 12. Valero counters that its billing was necessary to (1) assess the viability of such a motion, (2) plan its deposition of the expert in question, and (3) draft a motion that would have essentially won the case. Doc. 177 at 10. Valero further argues that the participation of multiple billing professionals is immaterial because each played a different role. *Id.*

The Court agrees that 131 hours to prepare a *Daubert* motion is excessive. The Court will reduce the compensable hours for this motion to 80 hours.

**E.     Motions for Summary Judgment and Replies.**

Plaintiffs note that Valero's counsel used eight billing professionals to bill 332 hours on Valero's summary judgment motions. Doc. 175 at 12. Plaintiffs also note that Valero's counsel billed 97 hours to prepare its reply briefs, which included 21 hours of legal research and 29 hours by six billing professionals to analyze Plaintiffs' response

briefs. *Id.*[2] Valero counters that these motions addressed factually and legally complex claims: five from Two Brothers, and two from the Station Plaintiffs. Doc. 177 at 11.

The Court agrees that 332 hours to prepare motions for summary judgment is excessive. Although the motions were substantial, including 549 pages of facts and supporting exhibits, many of the factual assertions were unnecessary to the motions. Doc. 115. The Court will reduce the compensable hours for the motions to 225 hours. The Court also agrees that 97 hours for reply briefs is excessive, and will reduce the compensable hours to 60.

Plaintiffs next argue that attorney Rodney Ott's billing of 9.4 hours for "strategy discussions re: reply to MSJ" is too vague to justify an award. Doc. 175 at 12-13. Valero does not respond to this argument. The complete billing entries reveal that Mr. Ott spent 9.4 hours on strategy discussions and work related to the reply in support of the motions for summary judgment. Doc. 158-3 at 184. Because these entries neither identify the participants in the "strategy discussions" nor explain what "work" was performed, they fail to "describe the services rendered so that the reasonableness of the charge can be evaluated." LRCiv 54.2(e)(2). The Court will remove these 9.4 hours from the compensable hours and reduce the fee award by $4,032.60.[3]

### F. Preparing for Oral Argument.

Plaintiffs note that Valero's counsel spent 302 hours to prepare for oral argument on the *Daubert* and summary judgment motions. Doc. 175 at 13. They assert that this work began approximately three months before the hearing and included 60 hours of legal research on issues already addressed in the motions. *Id.* Valero counters that counsel had to prepare for six pending motions: two for summary judgment, the *Daubert* motion, two motions to strike expert reports, and a motion regarding confidential information. Doc. 177

---

[2] Plaintiffs also contend that Valero's counsel spent 72 hours revising its reply brief. Doc. 168 at 5. But Plaintiffs' calculation is unclear given their simultaneous assertion that 50 of the 97 hours spent on the reply briefs were devoted to research and analysis. *See id.*

[3] The reduction in fee awards for attorneys' fees reflects 110% of the base fee, as required in Valero's billing agreement. Doc. 158 at 14-15.

at 11.

The Court agrees that 302 hours to prepare for oral argument is clearly excessive, even for six pending motions. Because those motions were fully briefed, the Court cannot agree that so many additional hours were necessary to prepare. The Court will reduce the compensable hours for preparing oral arguments to 150 hours.

### G. Fee Application.

Plaintiffs note that Valero's counsel billed 109 hours to prepare its fee application, which included 49 hours of legal research "regarding the well-established law related to attorneys' fees awards." Doc. 175 at 13. Valero does not respond to this assertion. *See* Doc. 177.

The Court agrees that 109 hours to prepare a routine fee application is excessive, even for a multi-year litigation. The Court will reduce the compensable hours for preparing the fee application to 50 hours.

### H. Depositions.

Plaintiffs note that two attorneys – Jeffrey Wolf and Sarah Anchors – both billed for taking Saad Saad's depositions on August 10 and August 11, 2016. Doc. 175 at 13. Wolf billed 19 hours and Anchors billed 18 hours. *Id.* Both attorneys also billed for taking Ali Saad's deposition on August 17, 2017. *Id.* Wolf billed 8 hours and Anchors billed 5.5 hours. *Id.* Then Wolf and Anchors each billed an additional 3.5 hours for the continuation of Saad Saad's deposition on September 1, 2016. *Id.* at 13-14. Only Wolf examined the witnesses during these depositions. *Id.* at 14. Valero counters that it "is proper to seek fees for the attendance of two attorneys at the same deposition, especially for a key principal, and that two of Plaintiffs' lawyers were also in attendance." Doc. 177 at 11. The Court agrees with Valero. Plaintiffs have not shown that these charges are unreasonable, especially in light of the fact that they related to the depositions of Two Brothers' owners.

### I. Billing Error.

Plaintiffs next identify an apparent billing error in which attorney Daniel Roberts billed 0.4 hours on a response to a motion that Plaintiffs never filed. Doc. 175 at 14.

Valero concedes the mistake. Doc. 177 at 8 n.8. The Court will reduce the fee award by $112.20.

**J.     Expert Fees.[4]**

Plaintiffs argue that the billing statements of Valero's expert – Dr. Michael Noel – do not demonstrate what tasks were performed and therefore prevent any assessment of their reasonableness. Doc. 175 at 9. Valero counters that Plaintiffs failed to cite any authority to support this argument. Doc. 177 n.9. But Valero does not cite any authority of its own. *See id.* Valero simply argues that the expert report and deposition should be sufficient to put Plaintiffs on notice of the content of Dr. Noel's work. *See id.* The Court agrees with Plaintiffs. Valero presents monthly billing statements for Dr. Noel, but none of the statements describe the work he performed to justify his fees. Doc. 158-6. Dr. Noel's billing statements fail to "describe the services rendered so that the reasonableness of the charge can be evaluated." LRCiv 54.2(e)(2). The Court accordingly will reduce Dr. Noel's fee award by $134,491.32. *See* Doc. 158-4 ¶ 37 (half of the requested fee).

**K.     Taxable Cost.**

Plaintiffs also argue that a $400 filing fee to remove the case to the district court was included in litigation costs, even though it is a taxable cost. Doc. 175 at 10 n.6. Valero separately requested reimbursement for this filing fee in its bill of cost pursuant to Local Rule 54.1. Doc. 157. The Court will therefore reduce the award of litigation costs by $400.

**L.     Conclusion.**

The Court will award Valero $310,862.77 in expert fees and $48,809.44 in other litigation costs.

Valero requested $1,625,394.10 in attorneys' fees for 3,987.4 hours of work related to the pre-summary-judgment litigation resulting in dismissal of all Plaintiffs' claims. Doc. 158-4 ¶ 32. The Court will first reduce that amount by Mr. Ott's hours related to the summary judgment reply and the billing error discussed above. This brings the total

---

[4] Plaintiffs included this argument in challenging the reasonableness of fees related to the Station Plaintiffs' claims, but noted that the argument would also be applicable to Two Brothers' claims. For simplicity, the Court addresses it here.

- 9 -

requested fees to $1,621,249.30 for 3,977.6 hours. Next, the Court will reduce the new total hours by 406, as outlined above. This is approximately a 10% additional reduction in the billable hours. Applying this percentage reduction to the requested attorneys' fees, the Court finds that an attorneys' fees award of $1,459,124.37 for the pre-summary-judgment work is appropriate.

**IV. Fees Related to the Station Plaintiffs' Claims.**

Valero asserts that the DMAs entitle it to a fee award for the Station Plaintiffs' claims. Doc. 174 at 6. Plaintiffs counter that the DMAs only apply to litigation between Valero and Two Brothers. Doc. 175 at 3. The Court agrees with Plaintiffs. The Station Plaintiffs were not parties to the DMAs. Doc. 155 at 30. Valero must therefore justify its requested fee for the Station Plaintiffs' claims under A.R.S. § 12-341.01(A).

Plaintiffs' original complaint included several contract claims against Valero, but the Court dismissed those claims on November 25, 2016. Doc. 26 at 5-6. Plaintiffs concede that § 12-341.01(A) entitles Valero to a fee award for work performed prior to the dismissal of these claims. Doc. 175 at 3.

**A. Entitlement to a Fee Award.**

Plaintiffs contend that § 12-341.01(A) cannot justify a fee award with respect to tortious interference claims because they do not "arise out of contract" for purposes of the fee-award statute. Doc. 175 at 4. Valero counters that these claims are interwoven with the contract claims and based on the same factual predicate: the alleged overpricing of fuel in violation of the DMAs. Doc. 174 at 10.

In *Bar J. Bar Cattle Co. v. Pace*, 763 P.2d 545 (Ariz. Ct. App. 1998), the Arizona Court of Appeals specifically addressed a tortious interference claim and denied attorneys' fees. *Id.* at 550. Bar J Bar had for many years leased land from the New Mexico and Arizona Land Company ("Company"). *Id.* Pace sought out and purchased the land from the Company in 1982, thus terminating Bar J Bar's lease. *Id.* at 546-47. Bar J Bar sued, alleging that Pace interfered with its contractual relationship with the Company. *Id.* at 547. The Court of Appeals affirmed the grant of summary judgment to Pace, finding no evidence

that Pace's conduct was improper. *Id.* at 549. In upholding the trial court's denial of fees under § 12-341.01(A), the court emphasized that there was no contractual relationship between Bar J Bar and Pace, and the "duty to not interfere with the contract of another arises out of law, not contract." *Id.* at 550. The court reasoned that tortious interference could even be committed where the plaintiff has no contractual rights but simply the prospect of a contractual relationship. *Id.* (citing Restatement (Second) of Torts § 766B cmt. c).

*Bar J. Bar* controls the decision in this case. After the Court dismissed the Station Plaintiffs' contract claims, finding that they were not third-party beneficiaries of the DMAs, there was no contract claims between the Station Plaintiffs and Valero. The Station Plaintiffs alleged that Valero knew of their contracts with Two Brothers and tortiously interfered with them when it engaged in unfair pricing as part of its contract with Two Brothers. Doc. 29, ¶¶ 97-98. As in *Bar J. Bar*, the Court granted summary judgment on this claim because the Station Plaintiffs presented no evidence that Valero acted improperly. Doc. 155 at 26 (Plaintiffs have not presented "facts to show that Valero's price setting was improper"), 30 (granting summary judgment against the Station plaintiffs for the same reason). Because any duty to not tortiously interfere with the Station Plaintiffs' business relationships arose from law and not contract, the tortious interference claim does not arise from contract. *Bar J. Bar*, 763 P.2d at 550.

Valero agrees that tortious interference claims generally fall outside the scope of § 12-341.01(A) (Doc. 177 at 3) but argues that the Station Plaintiffs' tortious interference claim collapses into the claim for breach of contract because the line distinguishing Two Brothers and the Station Plaintiffs as individual parties is too blurred to treat the parties as distinct and separate entities. Doc. 177 at 3. Valero relies on *Killingsworth v. State Farm Mutual Auto Insurance*, No. CV 03-1950-PHX-NVW, 2006 WL 381682 (D. Ariz. Feb. 16, 2006), to support this argument. Killingsworth sued his former employer – State Farm – for breach of contract and various other claims. *Id.* at *1. He also sued his former coworker for tortious interference with his contractual relations with State Farm. *Id.* The court

- 11 -

granted summary judgment because the coworker was not "separate from State Farm and therefore could not have interfered with the contract of a third party." *Id.* State Farm then sought attorneys' fees under § 12-341.01(A). *Id.* at *2.

The district court first acknowledged that claims for tortious interference with contract do not normally come under the reach of A.R.S. § 12-341.01(A) because the duty is imposed by law. *Id.* But the court found the situation unique because the granting of summary judgment was predicated on the fact that there was no third party to support the tortious interference claim, and therefore the tortious interference claim collapsed into the breach of contract claim. *Id.* at *2-3.

This case is different. The Court did not grant summary judgment on the Station Plaintiffs' tortious interference claim because Valero was not a third party who could interfere, but because the Station Plaintiffs produced no evidence of improper conduct. The ruling was essentially the same as the ruling in *Bar J. Bar*. This case is not controlled by the unusual holding in *Killingsworth*.

The Court concludes that the Station Plaintiffs are liable for only those attorneys' fees incurred before their contract claims were dismissed. After that time, their claims were based on tortious interference and a Robinson Patman Act claim that Valero does not cite as entitling them to attorneys' fees. The Station Plaintiffs assert that fees incurred before the contract claims were dismissed total $91,556. Doc. 175 at 3 (citing Doc. 174-2 at 3-16). In its reply, Valero notes that the amount should be $100,711.60 in light of the Fee Agreement that called for Valero to pay a 10% premium if the case was won on summary judgment. Doc. 177 at 7 n. 6; *see* Doc. 174-3 ¶ 38. The Court will award $100,711.60 in fees against the Station Plaintiffs. The Court finds that this amount represents a reasonable fee incurred for work performed before the contract claims were dismissed, and that Valero is entitled to recover this amount under A.R.S. § 12-341.01.

The Court will not reduce Two Brothers' fee obligation by this amount because the Court has no basis for separating fees incurred because of the Station Plaintiffs' contract claims and Two Brothers' contract claims. As a result, this amount will be owed jointly

and severally with the fees award against Two Brothers, not in addition to those fees.[5]

**B.      Appropriateness of Fee Award.**

The Station Plaintiffs argue that the Court should exercise its discretion to deny or reduce the remaining fee award under § 12-341.01(A). Doc. 175 at 7. To determine whether an award is appropriate under § 12-341.01(A), courts consider multiple factors: (1) the merits of the unsuccessful party's claim, (2) whether the litigation could have been avoided or settled and whether the successful party's efforts were completely superfluous in achieving the ultimate result, (3) whether assessing fees against the unsuccessful party would cause extreme hardship, (4) whether the successful party prevailed with respect to all relief sought, (5) whether the legal question presented was novel or had been previously adjudicated, and (6) whether a fee award would discourage other parties with tenable claims from litigating. *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1319 (9th Cir. 1997) (citing *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985)); *Tucson Estates Prop. Owners Ass'n, Inc. v. McGovern*, 266 P.3d 111, 115 (Ariz. Ct. App. 2016). No single factor is determinative, and the Court must weigh all of the factors in exercising its discretion. *See Wilcox v. Waldman*, 744 P.2d 444, 450 (Ariz. Ct. App. 1987).

The Court will not reduce the $100,711.60 fee award based on these factors. Valero prevailed on each of the Station Plaintiffs' contract claims. Although the Station Plaintiffs contend that Valero did not participate in court-ordered settlement talks in good faith, Valero provides contrary evidence (Doc. 169-1 at 4-8), Plaintiffs' affidavit is too vague to accept Plaintiffs' assertion, and the talks appear to have occurred after the contract claims were dismissed.

Plaintiffs argue that a fee award would impose an extreme financial hardship, but

---

[5] Valero's argues, in the alternative, that the Court may award attorney fees for the Station Plaintiffs' tortious interference claims because they are interwoven with Plaintiffs' contract claims. Doc. 174 at 9. But once the Station Plaintiffs' contract claims were dismissed, their remaining claims were not interwoven with any contract claims they asserted. And the Court cannot conclude that the Station Plaintiffs are liable for fees that fall outside A.R.S. § 12-341.01 because they were interwoven with contract claims asserted by a separate party, Two Brothers.

fail to provide proof of debt, operating expenses, or income. "[T]he party asserting financial hardship has the burden of coming forward with *prima facie* evidence of financial hardship." *Rudinsky v. Harris*, 290 P.3d 1218, 1225 (Ariz. Ct. App. 2012) (emphasis in original) (quoting *Woerth v. City of Flagstaff*, 808 P.2d 297, 305 (Ariz. Ct. App. 1990)).

Further, the claims in this case were factually complex. And because the Station Plaintiffs' claims were not particularly meritorious, granting a fee award would have minimal effect on future plaintiffs with tenable claims. The Court accordingly concludes that an award of attorneys' fees against the Station Plaintiffs is appropriate.

## V.     Appeal Fees.

Plaintiffs challenge the reasonableness of Valero's appeal attorneys' fees. Doc. 175 at 14. Valero requests $155,684.65 for attorneys' fees incurred from October 4, 2017 to the present. Doc. 174-3 ¶ 38; *see also* Doc. 174-3 at 16. Plaintiffs assert that this amount is "grossly excessive," considering the appellate briefs largely tracked the same issues as the summary judgment motions. *Id.* at 15. Plaintiffs also make the following specific challenges based on Valero's counsel's time records (Doc. 174-3): (1) $18,494 for time related to replying to the first fee application; (2) $3,096.50 to inform the Ninth Circuit Mediation Coordinator that they were not interested in mediation; (3) $1,248.70 spent on preparing a three-page response to Plaintiffs' two-paragraph motion to extend time to file their opening brief; and (4) two lawyers billed $1,540.40 for the same "strategy meeting" on May 3, 2018. *Id.* at 14-15. Valero does not respond to these arguments.

Valero is entitled to a fee award for the appeal, and the Court, in its discretion, will award $120,000. This amount accounts for the specific excessive amount identified by Plaintiffs – with which the Court agrees – and an additional modest reduction to make the award for appeal fees reasonable.

## V.     Conclusion.

The Court will award Valero $310,862.77 in expert fees and $48,809.44 in other litigation costs against Two Brothers.

Valero requested $1,781,078.75 in attorneys' fees for 4,253.8 hours of work.

- 14 -

Docs. 158-4 ¶ 32, 174-3 ¶ 38. The Court reduced the pre-summary-judgment award to $1,459,124.37 and the post-summary-judgment appellate fee award to $120,000. Accordingly, the Court will award Valero $1,579,124.37 in attorneys' fees against Two Brothers.

The Court awards $100,711.60 in fees against the Station Plaintiffs, jointly and severally with Two Brothers.

**IT IS ORDERED** that Valero's motion for award of costs and attorneys' fees (Doc. 174) is **granted in part**. Valero is awarded $1,579,124.37 in attorneys' fees, $310,862.77 in expert fees, and $48,909.44 in other litigation costs against Two Brothers. Valero is awarded $100,711.60 in fees against the Station Plaintiffs, jointly and severally with Two Brothers.

Dated this 23rd day of August, 2019.

*David G. Campbell*

David G. Campbell
Senior United States District Judge